STATE of Missouri ex rel. STATE HIGH-
WAY COMMISSION of Missouri,
Plaintiff-Appellant,

v.

Edwin L. CONE et al., on Exceptions of A.
B. Colfry and Bernice Colfry,
Defendants-Respondents.

No. 47798.

Supreme Court of Missouri,

Division No. 2.

Sept. 12, 1960.

Robert L. Hyder, Melvin Englehart, Jefferson City, for appellant.

James P. Aylward, George V. Aylward, Terence M. O'Brien, Kansas City, for respondents.

ELMO B. HUNTER, Special Judge.

This is a civil action brought by the State Highway Commission of Missouri, appellant, against owners-respondents A. B. Colfry and his wife, Bernice Colfry, for the purpose of acquiring by condemnation for right-of-way purposes certain land at 9th and Campbell Streets in Kansas City, Missouri, and the two-story Colfry building located thereon.

The Commissioners awarded respondents $45,000. Both appellant and respondents filed exceptions. The cause was tried to the jury on the issue of the fair market value of the property, and the jury returned its verdict in favor of respondents in the sum of $56,100.

■ Appellant's contention during the jury trial was that the value of the property was $45,195. Thus, the amount in dispute, exclusive of costs, exceeds $7,500. As the notice of appeal was filed in the trial court before January 1, 1960, this court has exclusive appellate jurisdiction. Section 477.040 RSMo 1949 and V.A.M.S., as amended Laws 1959, S.B. No. 7; State ex rel. State Highway Commission v. Hudspeth, Mo., 297 S.W.2d 510.

■ We are faced at the outset with respondents' motion to dismiss the appeal for failure of appellant to comply with our Rules 1.08 and 1.15 [1]. There is some merit in the motion but there is sufficient compliance with the rules to enable us to determine the matters in controversy. In the exercise of our discretion we overrule the motion.

On this appeal appellant contends the trial court erred in admitting in evidence Exhibits 1, 5, 6, 7, 8, 9, and 10, and in permitting respondents' counsel to make certain remarks in his closing argument to the jury. We proceed to examine appellant's contentions and in doing so we will refer to such evidence as is necessary to understand them. ⸱

Respondents' Exhibit 1 is a written summary showing the income and expenses on the property for the years 1951 through 1955. This summary was prepared by Henry Cuneo, a certified public accountant, from records of respondent A. B. Colfry kept in the regular course of business. Appellant contends Exhibit 1 did not meet the requirements of the Uniform Records Act (§§ 490.670, 490.680 RSMo 1949 and V.A.M.S.) in that there is no testimony by the person who prepared the records or other qualified witness as to the identity of the records, the mode or method of preparation, and if they were prepared or made in the regular course of business, at or near the time the income was received or the expense paid, or that they were correctly prepared. Respondents say the claim of error is neither meritorious nor preserved for appellate review.

Respondent A. B. Colfry testified that the records from which the summary was made were kept in the regular course of business by a bookkeeper employed by respondent, who worked under respondent's direction; that when tenants of the building paid their rent, the manager, who lived on the premises, issued rent receipts in triplicate, giving one to the tenant, one to respondent Colfry and keeping one. These rental receipts were then entered in respondent Colfry's records, which contained a separate account for each tenant. As to disbursements, each check and the purpose of the expenditure were also entered in these records. According to respondent, the records were correct.

According to the testimony of witness Cuneo, he prepared Exhibit 1 from these rather voluminous books and records of receipts and disbursements. Each record contained about 75 sheets. Each was known to him to be correct and accurate as he had used them in preparing the income tax returns of respondents, and had compared the entries with underlying evidence in the nature of checks, rental receipts and invoices.

Appellant's counsel objected to several preliminary questions asked concerning these records (which apparently were in the court room and exhibited to and available to the Court and counsel) on the basis that there had been no showing that witness Cuneo prepared these records of receipts and disbursements or that they were prepared under his supervision. However, when Exhibit 1 was offered in evidence it was received without objection.

■ An accountant's summary of voluminous records in court and available to all parties may be admissible in evidence, if otherwise qualified, even though the ac-

---

1. Now Civil Rules 83.05, 83.09, V.A.M.R.

countant did not make the original records from which the summary was prepared. To render a summary prepared by an expert of voluminous records admissible in evidence, it is the general rule that the competency of the records themselves as evidence must be established and the records made available to the opposite party for cross-examination. 20 Am.Jur., Evidence, § 449, page 400; Berthold-Jennings Lumber Co. v. St. Louis, I. M. & S. Ry. Co., 8 Cir., 80 F.2d 32, 44, 102 A.L.R. 688.

■■ However, it is not necessary for us to examine appellant's contentions regarding the admissibility in evidence of Exhibit 1 for appellant did not preserve its contentions for appellate review by objection to the offer in evidence of Exhibit 1. See Pierce v. New York Central R. Co., Mo., 257 S.W.2d 84, 88[5]. If a party believes a sufficient or proper foundation for the admission in evidence of a summary of voluminous records was not made, objection on that ground should be made to the offer in evidence of the summary; otherwise the question is not preserved for appellate review.

At the time of its taking, the Colfry building was approximately 32 years old. During the trial respondents contended and submitted expert testimony that the Colfry building had a useful life of 100 years and a depreciation rate of 1% per year. Appellant contended and offered expert testimony that the Colfry building had a useful life of only 50 years and hence its depreciation rate was 2% per year. As supportive of their position respondents put in evidence their Exhibits 5 through 10. These exhibits were photographs of six well known Kansas City commercial buildings of some 60 to 70 years of age and still being used.

Appellant contends these picture exhibits were improperly admitted in evidence because they were (1) not identified by a qualified and competent witness, and (2) were irrelevant and immaterial. Respond-

ents' position is that these exhibits were properly admitted in evidence and that appellant's present contention of error was not preserved for appellate review.

Respondents' witness Dasta, an experienced contractor and builder, testified that the Colfry building was of solid masonry construction. He examined respondents' Exhibits 5 through 10 and, without objection, testified that he had personally examined the New York Life Building, shown in Exhibit 5, and knew it was solid masonry construction and that all the others looked like they are solid brick buildings.

■ Respondents' witness Stroud, a Kansas City realtor of some 36 years' experience, who first resided in Kansas City in 1923, testified that from his own knowledge and experience he recognized and identified Exhibit 5 as the New York Life Building, built in 1889; Exhibit 6 as the Kansas City Public Service Building, built about 1890; Exhibit 7 as the Emery Bird Thayer Building, built about 1890; Exhibit 8 as the Manufacturers' Exchange Building, built about 1890; Exhibit 9 as the old New England Building, built around 1895, and Exhibit 10 as the Altman Building, built about 1895. Appellant objected to the admission in evidence of Exhibit 6 because the date it was built "wouldn't be based on the witness' experience." It was agreed that the same objection would go to all these exhibits. Additionally, appellant objected "to the entire testimony concerning these buildings unless a better foundation is laid here to qualify this witness," and at the conclusion of their identification made a general objection to their admission without any accompanying ground or reason. This general objection to the six picture exhibits preserved nothing for review. Teters v. Kansas City Public Service Co., Mo., 300 S.W.2d 511, 515[2].

■ Turning to appellant's objection that the pictures were not identified by a competent and qualified witness, the gen-

eral rule is one offering a photograph in evidence must show by extrinsic evidence that the photograph is an accurate and faithful representation of the place, person or subject it purports to portray. This authenticity may be established by any witness who is familiar with the scene, object or person portrayed and is competent to speak from personal observation. When witness Stroud, who had indicated a personal knowledge of the pictured buildings, said of picture Exhibit 5, "This is the New York Life Building," he, in effect, said "This photograph truly represents the portrayed part of the New York Life Building just as I have seen it." The trial court treated this as a sufficient authentication of the correctness of the exhibit by a qualified and competent witness, and we find no abuse of discretion thereby. The same is true of the other picture exhibits. See State v. Duncan, Mo., 316 S.W.2d 613, 619 [14]. The remainder of the first mentioned objection to the picture exhibits relates to the accompanying statement of witness Stroud as to his opinion of the approximate date of construction or age of these downtown Kansas City buildings, which date also appeared on the particular picture. As a properly qualified real estate expert it was competent for him to testify to his opinion of the approximate age or date of construction of these well known buildings. He could do so from his knowledge of the dates certain types of architecture and construction were used and from assembling and evaluating within his speciality relevant information of which he lacked personal knowledge. The trial judge has a broad discretion in determining whether or not a particular witness has sufficiently qualified to give an expert opinion on the subject, and in the absence of abuse of this discretion cannot be successfully charged with error. It is apparent from the record that the trial court did not abuse its discretion in ruling that witness Stroud was qualified to give his opinion as to the approximate year of construction or age of these six buildings which he rec-ognized in the picture exhibits and of which he indicated he had personal knowledge.

We next consider whether or not the picture exhibits were relevant and material. A photograph which is entirely irrelevant and immaterial to any issue in the case and is of such a nature as to divert the minds of the jurors to irrelevant or improper considerations should be excluded from evidence. In final analysis the decision rests on the principles of relevancy of the fact or facts pictured and not on the propriety of evidencing a relevant fact by a photograph. If the fact to be evidenced by the photograph is itself not admissible, it cannot be proved by photograph or otherwise. The determination of the relevancy and materiality of a photograph in the first instance is left to the sound discretion of the trial judge and his ruling in that regard will not be held error on appeal unless that discretion has been abused. Davis v. Illinois Terminal Railroad Co., Mo., 307 S.W.2d 395, 400; 32 C.J.S. Evidence § 716, p. 625; III Wigmore on Evidence, 3rd Ed., § 790, pp. 173–75; 20 Am.Jur., Evidence, § 730, pp. 609–610.

The useful life span and rate of depreciation of the Colfry building was an issue in the case as a factor in determining the fair market value of the property by both of the well known methods of reproduction cost less depreciation, and capitalization of earnings. Whenever consideration is given to the cost of reproduction as an element in the determination of market value, it is recognized that a proper deduction must be made for depreciation. Depreciation is considered as being of two types; conditions which are purely physical such as those caused by deterioration from wear and tear, and conditions usually referred to as functional depreciation which covers the effect of obsolescence and loss of adaptability. Even changes in style can be a factor in functional depreciation. The factors involved

in a particular case often are complex and subtle.

■ The fact that other commercial buildings, if of somewhat comparable construction, style and location, had useful lives of substantially more than 50 years was of possible probative value in refuting appellant's claim that 50 years was the maximum useful life of the Colfry building and in determining its reasonably to-be-expected useful life. There was evidence to the effect that these six buildings, like the Colfry building, were commercial buildings located in downtown Kansas City, Missouri, and were of solid masonry construction. Beyond that, as appellant states in its brief, no witness testified to any facts by way of comparison of the buildings with the Colfry building. The pictures themselves with all their details, which we have viewed, could be compared by the jury with those in evidence of the Colfry building for additional similarities and differences. Admittedly, the testimony of similarities in these buildings with the Colfry building and other evidence that might bear on the question of their useful life and obsolescence rate leaves much unsaid and unexplained. This would affect the probative value of the picture exhibits, but considering the testimony and the pictures, we are unwilling to say as a matter of law that they had no probative value and were immaterial to any issue, particularly in view of the broad and diverse nature of the relevant items properly to be considered in determining not only physical depreciation but also functional depreciation and obsolescence. It was for the jury to decide what probative value, if any, it would give to them under the evidence. We find no merit in appellant's contention that the trial court abused its discretion in the admission of these exhibits.

During the closing argument of counsel for respondents several statements were made to the jury which appellant contends resulted in prejudicial error. Evidence relevant to this contention disclosed that the reproduction cost of the Colfry building was an important issue between the parties in determining the fair market value of the property. Both sides offered expert opinion evidence on this subject. Respondents' expert testimony on the reproduction cost was: Witness Dasta, $121,500; witness Stroud, $117,000, and witness Dwyer, $106,200. Appellant's was: Witness Brown, $45,000; witness Bliss, $75,390, and witness Moore, $8 per square foot. According to the evidence, appellant was paying its expert witnesses $100 a day for their time both in preparation and in testifying. For other appraising and negotiating services they rendered appellant had paid them approximately these sums: Moore, $21,000; Brown, $27,300; Reed, $10,500, and Bliss, $10,000. All of the experts on both sides were real estate men except witness Dasta.

In the light of this evidence, respondents' counsel argued to the jury: "You are talking about building construction costs here, and I am sure you ladies and gentlemen know that an experienced builder can figure what the cost of a building is without counting the bricks. * * * that is why Mr. Vincent Dasta could walk in and look at that building one hour and tell you what its reproduction cost is. And there wasn't one contractor who came here to deny it, not one. With the vast resources and the money they have to spend, as you ladies and gentlemen heard—." Appellant's counsel interrupted at this point with an objection to "any remarks about the money we have to spend," and assigns as error the court's permitting this interrupted argument. Respondents' counsel refrained from further mention of the matter.

■ Respondents' argument that as a contractor and builder Dasta's opinion on the subject of construction costs was best because he was better qualified on the subject was a proper argument to which no objection was made. Nor was it improper to argue to the jury that the appellant had not produced any witness who was a con-

tractor or builder and thus had failed to produce one with the qualifications of witness Dasta. The accompanying interrupted referral to what the jury had heard (by way of the evidence) as to the resources and money of the appellant was made presumably to call to the jury's attention that appellant could have afforded a contractor-builder as a witness on the subject. In view of the evidence properly before the jury concerning the charges of and payments to appellant's expert witnesses in the case and respondents' counsel's abandonment of the subject upon objection, we are convinced that the interrupted remark did not affect the merits of the case.

At another point in the closing argument respondents' counsel stated: "Now, finally I come to these witnesses, Mr. Moore, Mr. Reed, Mr. Brown, and Mr. Bliss. You ladies and gentlemen saw them, you got the picture; this is the hatchet crew, this is the wrecking crowd in the State Highway Department, ladies and gentlemen. If you have a piece of property and the State Highway Department wants it, one of these gentlemen comes knocking at your door and he says, 'I've been appointed to appraise your property,' and he comes in with a very low appraisal, he finds every fault he can with your property, he says, 'This is the appraisal, this is what we are going to pay you and if you don't accept this, you are going to have to go to court, you are going to be held up two or three years.'" Upon appellant's counsel's objection that these were improper inferences and that calling these witnesses hatchet men was disrespectful, the court sustained the objection and admonished respondents' counsel to stay within the record. Thereafter, respondents' counsel commenced to tell the jury that they, the jurors, were not a part of the wrecking crew, not hatchet men, not paid to beat down the value. Appellant's attorney, out of the presence of the jury, interrupted the argument and moved for a dismissal of the jury for calling the witnesses hatchet men. The trial court overruled the motion to discharge the jury.

Respondents' experts Stroud, Dwyer and Miller had testified that the value of respondents' property was $90,000, $70,000, and $83,000, respectively. Appellant's experts Moore, Brown, Reed and Bliss had said this value was, respectively, $44,500, $40,000, $37,500 and $45,200. According to the evidence appellant's experts Moore, Brown and Bliss had each been employed by appellant to appraise several hundred separate properties. Reed had been employed by appellant as a negotiator to negotiate the purchase of some 200 separate tracts. Moore, Brown and Bliss had testified for appellant in numerous other condemnation cases.

It was proper to show these employments and payments as bearing on the issues of the interest, relationship and possible bias of appellant's witnesses. Respondents contend they had a right to argue all the inferences legitimately deducible from the evidence, and that if respondents' experts were truthful as to the value of the property it was a legitimate inference to say that appellant's experts had cut down or chopped down that value and, hence, were a "hatchet crew".

Under the evidence it was proper for respondents to contend in their argument to the jury that appellant's experts were biased and had cut down the value of the property from its true fair market value. However, calling them "hatchet men" was disrespectful and improper. The trial court properly sustained appellant's objection thereto. While respondents' counsel thereafter refrained from calling appellant's witnesses a hatchet crew it was also improper to indirectly enliven the subject by telling the jurors that they, the jurors, were not hatchet men.

The remainder of the objected to portion of the closing argument, "This is the appraisal, this is what we are going to pay you and if you don't accept this, you are going to have to go to court, you are going to be held up two or three years"—was beyond the issues and the evidence. As

noted previously, the trial court promptly sustained the objection made and admonished counsel to stay within the record. Additionally, appellant's counsel in his closing argument previously had advised the jurors that the State must appraise this property before the highways are built to determine the price upon which the property will be bought; that if it can't be bought then it must be condemned "just as it is right here today" and that "where there is disagreement on the value of the property and then we resort to this very practice that we are here for right now, where we must turn to a jury * * * and leave it up to them * . * *."

It is axiomatic that in the closing argument counsel may comment on any fact in the record if such comment has a legitimate bearing on the issue but that counsel may not make prejudicial argument on immaterial facts which happen to get into the record and justify the argument on the ground the facts he argued about were in the record. Beer v. Martel, 332 Mo. 53, 55 S.W.2d 482, 484.

In overruling the motion to discharge the jury it is clear that the trial court considered all the circumstances and felt the result of the objected to remarks was trivial and that the entire incident was not sufficiently serious to necessitate the discharge of the jury. The refusal to discharge the jury under the circumstances was not an abuse of judicial discretion and did not result in error.

Appellant's final contention is that even though each one or more of the foregoing alleged errors, standing alone, may not amount to reversible error, in their totality they do constitute reversible error. It is possible that one of several incidents or errors standing alone may not constitute reversible error but that when considered in toto their cumulative prejudicial effect would amount to reversible error. See Faught v. Washam, Mo., 329 S.W.2d

588, 604 [30]. However, our review of the record before us does not reveal any errors, whether viewed singly or cumulatively, that amount to reversible error.

The judgment is affirmed.

LEEDY, P. J., and EAGER and STORCKMAN, JJ., concur.