Ray M. JOURDAN, et al., Plaintiffs, Respondents,

v.

Theodore E. GILMORE, et al., Defendants, Appellants.

No. 31975.

Missouri Court of Appeals, Western District.

Aug. 17, 1982.

Bigus & Bigus, Kenneth E. Bigus, Lawrence W. Bigus, Kansas City, Charles P. Fleming, Jr., Shawnee Mission, Kan., for defendants, appellants.

Muller & Muller, Dennis G. Muller, Kansas City, for plaintiffs, respondents.

Before CLARK, P. J., and MANFORD and KENNEDY, JJ.

MANFORD, Judge.

The multi-count petition filed in this cause sought the appointment of a receiver for a corporation, corporate dissolution, accounting, actual and punitive damages for negligence and conversion. The judgment is affirmed.

On this appeal six points are presented which in summary charge the trial court erred (1) in making a final accounting upon failure to allow credit for funds advanced by appellant, (2) in making a final accounting upon erroneously charging appellant with certain income, (3) in assessment of damages for conversion because the evidence did not support the sum awarded, (4) in allowing recovery of certain litigation costs against appellant, (5) allowing recovery for damages for negligence because the evidence did not support a finding of negligence, and (6) the improper allowance of attorneys' fees because evidence of same was not in compliance with the best evidence rule and not admissible under the Business Records Act.

To say this litigation has been protracted would be an understatement since it commenced December 21, 1973 and has continued sporadically until the present. The record reveals the following pertinent facts:

On July 27, 1971, the parties entered into an agreement to organize a Missouri corporation for the purpose of buying, renting and selling aircraft and for the operation of a flying service in and around British Honduras. On July 20, 1971, Ray Jourdan (plaintiff-respondent), Theodore Gilmore (defendant-appellant), and Walter Gross (not a party to this appeal), met with attorney Samuel Sayles (plaintiff-respondent) to have Sayles incorporate the business.

The parties agreed that voting control of the corporation and profit-sharing would be based upon paid up shares, that any shares not paid by September 1, 1973, would be forfeited and in the event of dissolution within the first twenty-four months, the subscribers would be permitted to obtain from the corporation only the amount of their actual investment based on a proration of corporate assets. Attorney Sayles was to prepare the necessary paper work. The parties further agreed 100,000 shares would be authorized for issuance at $1.00 per share. An initial agreement encompassing the above terms was signed and upon this signing the parties transferred certain capital assets and selected directors/officers of the corporation. Attorney Sayles, acting on behalf of Jourdan and plaintiff R.C.R. Development, Inc. (a company owned by Jourdan), contributed (in exchange for Jourdan's stock) the following:

| Twin Beech Aircraft | | |
| --- | --- | --- |
| 8643E | Net Value | $15,250 |
| Twin Beech Aircraft | | |
| 8329 | Net Value | 10,000 |
| Tools and Equipment | | 5,000 |
| Beech 35 Kits (2) | | 672 |
| Twin Beech Kits (2) | | 4,000 |
| Independence Airport | | |
| credit | | 1,500 |
| | Total | $36,422 |

Gilmore contributed:

| Aztec Aircraft | Net Value | $14,000 |
| --- | --- | --- |
| Sea Bee Aircraft | | 10,000 |
| Cash | | 1,457 |
| Organization Expense | | 138 |
| | Total | $29,595 |

The shareholders' interests were designated as follows:

| | |
| --- | --- |
| Theodore Gilmore | 32,000 shares |
| Samuel Sayles, as Trustee for R.C.R. Development, Inc. and Ray Jourdan | 32,000 shares |
| Walter Gross | 2,000 shares |
| Samuel Sayles (individually) | 2,000 shares |
| Louise Hart [1] | 2,000 shares |

1. The interest of Louise Hart (2,000 shares) arose due to her role in bringing the parties together.

Island Airways was the name selected for the newly formed corporation and the following corporate positions were agreed upon:

President . . . . . . . . . . . . . . Theodore Gilmore
Treasurer . . . . . . . . . . . . . . Ray Jourdan
Secretary . . . . . . . . . . . . . . Samuel Sayles
Vice President . . . . . . . . . . Walter Gross

The record reveals the necessary paper for incorporation was prepared by Sayles September 21, 1971, but not filed with the Secretary of State until May 25, 1972, which is the date of the corporate charter issuance.

In July, 1971 following the initial agreement (above), Jourdan, Gilmore and Gross agreed that on behalf of the corporation, Gross would go to British Honduras to secure an airline permit and to contract for passengers and/or freight. At this time, the Twin Beech (8329) was on an island near British Honduras. The other Twin Beech (8643E) was placed in service to the corporation when Gross left for British Honduras August 31, 1971. Although the record is not clear, Gross apparently failed to accomplish his assigned tasks. The parties realized little or nothing had been achieved by Gross' trip and Gilmore proposed that the corporation purchase a helicopter to make some money. This was agreed to and a helicopter purchased. This purchase was financed by a loan from the Blue Springs Bank and the loan was secured by the Aztec Aircraft (listed above) contributed by Gilmore. This loan transaction included, in part, the pay-off balance on the Aztec on another loan and in part, the purchase of credit life insurance. A balance sum of $6,285.33 was given to the corporation by the bank. However, even with the purchase of the helicopter the business of the corporation remained negligible.

On May 20, 1972, an event occurred which, (if any one thing could be said to have done so) perhaps led to this litigation. Gilmore, while attempting a takeoff in the Twin Beech (8643E), with a load of skydivers, wrecked the Twin Beech (8643E). Following this crash, Jourdan demanded Gilmore either pay for or replace the Twin Beech (8643E). Gilmore refused to do either and indicated to Jourdan that he (Gilmore) would take the Aztec, the Sea Bee and helicopter and that Jourdan could take the wreckage of the Twin Beech (8643E) and the Twin Beech (8329) still in British Honduras. Following this, Gilmore appropriated to himself the Aztec and Sea Bee and withheld them from others in the corporation. Through counsel, Gilmore demanded that no further action be taken by anyone connected with Island Airways, Inc. and the release of money and property he contributed to the corporation. The helicopter had been stored in a building in Harrisonville, Missouri. In July, 1972 Gilmore broke into the building and absconded with the helicopter. In September, 1972 Gilmore transferred the F.A.A. registrations of title to the Aztec and Sea Bee from the corporate name to his own name.

The foregoing events gave rise to the instant proceedings. A petition by Jourdan, Sayles and R.C.R. Corporation and against Gilmore, Gross, Island Airways and Bakers Flying Service was filed December 21, 1973. The multi-count petition requested that the court appoint a receiver and authorize the receiver to take possession of the corporate planes and property, including that withheld by Gilmore, for the ultimate purpose of liquidating the assets of the corporation. The petition also sought actual and punitive damages against Gilmore for the destruction of the Twin Beech; and accounting by Gilmore for money due the corporation which he converted; and damages against Gilmore (both actual and punitive) for the conversion of the helicopter and that the receiver be joined in certain claims against Gilmore on behalf of the corporation.

A receiver was appointed. A ten-day trial to the court without a jury was conducted sporadically from September 10, 1974, to March 5, 1975. On February 5, 1976, the trial court entered initial findings of fact and conclusions of law. These findings and conclusions declared the existence of a corporate deadlock, that the receivership

should continue, that defendants make an accounting of their use of corporate property, that the corporate assets be liquidated for purpose of distribution, and that each incorporator be restrained from removing, selling or concealing any corporate assets or profits. The trial court later vacated part of these findings and conclusions and reserved the final determination of issues related to the crash of the Twin Beech (8643E) by Gilmore.

On June 5, 1980, following extensive proceedings related to the crash of the Twin Beech (8643E) and other matters, the trial court entered an order which found Gilmore negligent in the crash of the Twin Beech (8643E), that Gilmore's liability to the corporation exceeded his contributions and that judgment should be entered against him. This same order also declared the dollar contributions and liabilities of the parties to the corporation and awarded attorney fees and litigation costs to the respondents as charges against corporate assets.

On September 5, 1980, respondents filed a "Motion For Distribution, Including Determination of Net Amount of Debt Owing by Defendant Gilmore, Priority of Claims and Ratio of Distribution to Stockholders". A proposed order of distribution accompanied the motion. On September 19, 1980, in accord with respondents' motion, the trial court entered judgment against Gilmore in the sum of $13,221.25 and costs in favor of respondents. The judgment reflected a net balance after crediting Gilmore with a total contribution of $40,362.72.

■ Under point (1) appellant (Gilmore) contends the court erred in making final accounting against him upon failure to allow an audit for funds advanced by appellant to the corporation.

The record immediately dispels appellant's contention. In the first instance, the record shows Gilmore was directed to account to the court in writing and he failed to do so. In another instance, the court requested all parties to submit a complete accounting accompanied by supporting documentation. Respondents complied, Gilmore did not.

■ Appellant claims the court failed to fully credit him with his contributions. This court concludes otherwise. The evidence supports the trial court's findings that Gilmore's contributions consisted of $24,000 in aircraft and $16,362.72 in contributions other than aircraft. Appellant takes specific exception to the court's failure to include the sums of $290.57 as a payment to the Blue Savings Bank; $800 as reimbursement for work done by Bakers Flying Service on the Aztec, and $499 reimbursement for insurance on the helicopter. Again it is pointed out that although requested and directed to do so, Gilmore provided no written documented accounting of any items including the above three. These three items were challenged by respondents and the evidence reveals (1) no documentation of the $290.57 claim identified as a loan payment on the Aztec during the period of time Gilmore withheld the Aztec from the corporation. The trial court properly disallowed the claim; (2) the $800 claim purported to be for reimbursement for repairs to the Aztec during the same period and the trial court properly disallowed this claim; and (3) the $499 claim was paid from corporate funds and the trial court properly disallowed this claim.

■ Gilmore sought recovery for contributions of corporate property which the evidence reveals he wrongfully withheld from the corporation. The law will not allow a claim for the improvement of a chattel of a willful wrongdoer. *Finnell v. Million,* 99 Mo.App. 552, 74 S.W. 419 (1903); *Hendricks v. Evans,* 46 Mo.App. 313 (1891); *Koenig v. Leppert Roos Fur Co.,* 260 S.W. 756 (Mo. App.1924).

The record reveals the trial court properly credited appellant's contributions to the corporation. Point (1) is found to be without merit and is ruled against appellant.

Under point (2), appellant contends the trial court erred in its accounting against appellant by erroneously charging him with income due the corporation.

This contention centers upon the finding by the trial court that Gilmore had received the total sum of $4,555 and had not accounted for said sum to the corporation. This total represented $4,100) charges and monies received for flying "sky-jumpers" and $385 as rental of the Aztec to one Marshall Branson. Appellant's whole argument is premised upon his allegation that the only evidence on this issue was the testimony of Jourdan, who estimated the income from the "sky-jumpers" would be $2,500 to $3,000 and from the Branson rental of $350 to $425. If appellant's above conclusion was the only evidence on this point, his argument might tend to be a bit more persuasive. The record, however, reveals the court, by request and directive, called for a written documented accounting of claims, etc. Appellant never responded. Respondents filed a written accounting. The figures of $4,170 and $385 were, the record reveals, constructed from the deposition testimony of Gilmore. There was sufficient evidence to support the trial court's finding of unaccounted income to the corporation by Gilmore in a total sum of $4,555. Point (2) is found to be without merit and is ruled against appellant. Under point (3) appellant contends the court erred in its assessment of damages in the sum of $10,000 for conversion of the helicopter.

It is appellant's contention the evidence is insufficient because it revealed only the purchase price of $5,000 for the helicopter plus the opinion of Jourdan the Helicopter was worth between $10,000 and $15,000. Appellant attacks the credibility of Jourdan as to the value because at trial, Jourdan stated: "I'm not aware of helicopter values." The testimony of Jourdan also included his observation of a helicopter sale in support of his opinion as to a value of $10,000 to $15,000.

Appellant argues the best evidence as to the value of the helicopter was its purchase value of $5,000. The record reveals appellant objected at trial to Jourdan's testifying as to value. The trial court, after being advised of Jourdan's experience in such purchases and sales and "remaining in this field all these years", qualified Jourdan to testify. The testimony of Jourdan was admissible and as an owner he was qualified to testify as to the reasonable value of the helicopter. *Harris v. Quality Dairy Company*, 423 S.W.2d 8 (Mo. App.1967); *Langdon v. Koch*, 435 S.W.2d 730 (Mo.App.1968). In this regard, a person is not disqualified because of his status as a corporate officer, *St. Joseph Light & Power Co. v. Kaw Valley Tunneling, Inc.*, 589 S.W.2d 260 (Mo.1979); *Krug v. United Disposal, Inc.*, 567 S.W.2d 133 (Mo.App.1978), and lack of experience as to values merely goes to the weight of the testimony, not its admissibility. *Keeton v. Sloan's Moving and Storage Company*, 282 S.W.2d 194 (Mo. App.1955); *State ex rel. Terry v. Ace Storage & Moving Co.*, 135 S.W.2d 363 (Mo.App. 1940).

The record reveals, in addition to the original purchase price ($5,000), that there had been improvements of $1,000 to the helicopter. As noted above, this was an action for conversion. Appellant cannot claim credit for improvements. *Finnell*, supra. From the whole of the evidence, this court concludes that it was sufficient to support the trial court's assessment of the sum of $10,000 as the value of the helicopter. Point (3) is found to be without merit and is ruled against appellant.

Under point (4) appellant charges trial error in allowing respondents to recover the sum of $506.20 as costs of litigation.

Appellant contends recovery of these monies is prohibited by *Edwards v. Smith*, 322 S.W.2d 770 (Mo.1959). *Edwards*, does not unequivocally prohibit recovery of costs and attorney fees, but declares such items to be *not* ordinarily recoverable in actions for damages. Respondents meet appellant's contention by referring the court to *Leggett v. Missouri State Life Insurance Company*, 342 S.W.2d 833, 936 (Mo.banc. 1960). *Leggett* ruled:

"... where one goes into a court of equity and takes the risk of litigation on himself, and successfully 'creates, protects or preserves a fund' ... in which

others are entitled to share, those others will not be allowed to lie back and share the results of the successful labors without contributing their proportionate part of counsel fees (citations omitted). . . . *However, counsel fees may properly be allowed, other circumstances permitting, when the interests of the party seeking the allowance are antagonistic to the one brought to account and compelled to pay a fund into court even though he is one of the beneficiaries of the fund.*" (Emphasis added.)

*Leggett* dealt precisely with attorney fees, but suggests the applicability of such a rule to *all* forms of expenses of litigation. Thus, recovery under the proper facts and circumstances, is applicable to all forms of cost recovery where an action in equity successfully seeks to benefit others receiving distribution of a fund. The rule in *Leggett* is in harmony with the general rule that " . . . courts of equity have power to charge funds realized from, or preserved by, litigation with costs and expenses of litigation", 20 C.J.S. Costs, § 123, p. 362. See also *Tracy v. Martin*, 363 Mo. 108, 249 S.W.2d 321 (1952); *Publicity Bldg. Realty Corporation v. Thomann*, 353 Mo. 493, 183 S.W.2d 69 (Mo. 1944). In the instant case, respondents brought an action to preserve the assets of the corporation and incurred costs in prosecuting it which were documented to the court. This action was aimed at the ultimate goal of distribution to all interested parties.

There is no merit to appellant's point (4) because this court concludes this action, as regards the allowance of fees and costs, falls within the rule of *Leggett,* supra. Point (4) is ruled against appellant.

▪ Under point (5) appellant charges the court erred in allowing recovery against him on the issue of negligence in the crash of the Twin Beech aircraft because the evidence fails to support a finding of negligence on the part of appellant.

In his argument, appellant charges respondents' evidence simply failed to prove appellant negligently caused the crash. The record reveals that ten "sky-jumpers"

had contracted for the use of the Twin Beech aircraft. On the date they were to fly, Gross was to pilot the craft, but failed to show up. Jourdan was asked about the situation and testified, "Well, of course, the first thing I said to him, was 'what were you doing flying the airplane', because you know, 'You're not qualified to fly with all those passengers'". Jourdan then testified that appellant told him, " . . . Gross, who was supposed to fly didn't show up and he [appellant] decided he'd fly it because he needed the money." There was conflicting evidence as to the required ground speed prior to takeoff. Jourdan, who claimed twenty-five years experience in flying, stated that with that type of plane and load, a ground speed of 110–115 miles per hour minimum was necessary. When quizzed about his speed, Gilmore stated he reached " . . . maybe 60 miles per hour". As to the required distance of runway for this type of aircraft and load, Jourdan testified that 2200 to 2400 feet of runway would be necessary. Gilmore admitted to a requirement of a 3,000 foot runway. Gilmore testified he had covered about one-third of the 3,000 feet at lift-off. Witnesses to the crash testified the aircraft appeared to have too little speed to lift off. The F.A.A. accident report included an observation of a pilot and flight instrument instructor that the Twin Beech wobbled to and fro, as it started to fly, as though it had too little speed and that at lift-off it was just 1300 feet down the runway. Jourdan testified in a conversation with Gilmore that he [Gilmore] told Jourdan he was unable to keep the plane straight on the runway so he pulled it into the air as quickly as possible and tried to accelerate. According to Jourdan, Gilmore stated the speed was "maybe 60 miles per hour". When asked specifically if the ground speed ever reached eighty knots, Gilmore responded "We are approaching 80 knots". Jourdan's investigation at the crash scene revealed wreckage at 1100 feet down the runway. Gilmore, in his report to the F.A.A. stated, "he deliberately pulled the aircraft off the ground as soon as he could and then tried to accelerate." Gil-

more suggests to this court as a possible cause of the crash, the movement by one or more of the "sky-jumpers" in the rear of the aircraft. There is no evidence to support this suggestion. One of the "jumpers" who testified denied there was any movement. The evidence reveals Gilmore was the sole operator of the aircraft.

Respondents point out to this court that where there is an aircraft crash and a sole operator, a presumption of negligence arises. *Collins v. Stroh,* 426 S.W.2d 681 (Mo.App.1968). This presumption derives from our laws on evidence, principally the doctrine of res ipsa loquitur. However, this presumption based upon the evidence in the record, does not find necessary application in the instant case. The evidence taken as a whole is not only sufficient, but is substantial in support of the court's finding that appellant was negligent in the operation of the Twin Beech which resulted in its crash and damage. *Murphy v. Carron,* 536 S.W.2d 30 (Mo.banc.1976).

Appellant's point (5) is found to be without merit and is ruled against appellant.

Under his last point (6), appellant challenges the allowance of attorney fees because the evidence in support of the claim for such fees was not in compliance with the best evidence rule nor the Business Records Act (§ 490.680, RSMo. 1978).

The record reveals the parties were given approximately a month's notice that the court would hold a hearing on counsel fees and services. Respondents' counsel prepared a summary of their costs. The record reveals appellant made no inquiry or investigation of these costs. At the hearing, respondents' counsel began to testify as to the "summary" and the trial court observed that unless there was an objection by appellant, further testimony could be dispensed with. Appellant's counsel agreed and stated that the document "would speak for itself". The document was tendered as an exhibit and appellant objected that it was not the best evidence and was not made or originated at the time the services claimed were rendered. No objection to the original records being be-fore the court was raised, and testimony reveals they were before the court. The situation presented was evidence consisting of written records and oral testimony. As respondents point out, where a fact (in this case time and services) to be proven exists independently of a writing, and there is also evidence of such fact written in writing, then both sources, i.e., oral or written evidence, become primary evidence and the best evidence rule is inapplicable. *Aviation Enterprises, Inc. v. Cline,* 395 S.W.2d 306 (Mo.App.1965). The trial record reveals that the exhibit under attack on this appeal was not offered as a business record. The parties knew almost one month before the hearing that the source of the time/service records was respondents' counsel's file. The exhibit was a summary thereof, about which counsel was permitted to offer and testify, since there was no objection to the document from appellant during the testimony. The subsequent objection, at the time the exhibit was offered, took no exception to any item of time or service. Under the particular facts and circumstances, the present issue falls under the rule announced in *State ex rel. State Highway Commission v. Cone,* 338 S.W.2d 22 (Mo.1960), where it was held that a summary of voluminous records is admissible where those records are made available to the opposite party for cross-examination. The record fails to reveal appellant ever availed himself of this opportunity. The court in *Cone,* supra, further pointed out at page 26:

"If a party believes a sufficient or proper foundation for the admission in evidence of a summary of voluminous records was not made, objection on that ground should be made to the offer in evidence of the summary; otherwise the question is not preserved for appellate review."

Under the facts and circumstances of the instant case, it is not necessary for this court to discuss whether the question was properly preserved under *Cone* because the record shows that a sufficient foundation for the evidence was laid, that the exhibit was not offered and hence not subject to

§ *490.680,* supra, and that in all respects the evidence regarding time and service as to fees was sufficient and proper.

Point (6) is found to be without merit and is ruled against appellant.

For the reasons set forth herein, the judgment is in all respects affirmed.

All concur.