

# Missouri Court of Appeals

## Southern District

### Division Two

VERNON EARL MILLER, )
)
    Movant-Respondent, )
)
v. )   No. SD36039
)   Filed: December 1, 2021
STATE OF MISSOURI, )
)
    Respondent-Appellant. )

### APPEAL FROM THE CIRCUIT COURT OF CRAWFORD COUNTY

Honorable John D. Wiggins, Senior Judge

**<u>REVERSED AND REMANDED WITH DIRECTIONS</u>**

The State of Missouri (State) appeals from the motion court's order granting the request of Vernon Earl Miller (Movant) in his amended Rule 29.15 motion to vacate the judgment entered and sentences imposed following his convictions of forcible rape, statutory sodomy in the second degree, and statutory rape in the second degree.[1] In two points on appeal, the State contends the motion court clearly erred by granting relief because Movant was not prejudiced by: (1) defense counsel's failure to object to the

---

[1] Movant's charges related to crimes involving two victims. Count 1 of the felony information charged Movant with committing the forcible rape of A.A. Count 2 charged Movant with committing statutory sodomy in the second degree of A.A. Count 3 charged Movant with committing statutory rape in the second degree of M.L.

introduction of testimony about a laptop and a CD; or (2) defense counsel's failure to litigate and obtain a ruling on a motion to exclude all evidence kept in the Dent County Sheriff's Department evidence room (hereinafter, the Motion to Exclude All Evidence). We conclude that the motion court's findings and conclusions are clearly erroneous because, after reviewing the complete record, we have a definite and firm impression that a mistake has been made. *See **Hefley v. State***, 626 S.W.3d 244, 248 (Mo. banc 2021); ***Coday v. State***, 179 S.W.3d 343, 346 (Mo. App. 2005). Accordingly, the motion court's order granting relief is reversed. The case is remanded with directions to enter an order denying Movant's amended Rule 29.15 motion.

## Factual and Procedural Background

Movant's convictions and sentences were affirmed on direct appeal by this Court. ***State v. Miller***, 531 S.W.3d 91, 92-93 (Mo. App. 2017).[2] Just as in the direct appeal, we must view the facts in the light most favorable to the jury's verdicts. ***Rousan v. State***, 48 S.W.3d 576, 579 (Mo. banc 2001).

Movant lived on his property with his girlfriend, her sons, and her two daughters (M.L. and A.A.). Movant began inappropriately touching M.L. when she was seven or eight years old. Movant gave her extended hugs, French-kissed her, and touched her breasts and vaginal area. Before M.L. graduated from eighth grade, she was told by Movant that he would take her virginity on graduation night. On the night of M.L.'s graduation, M.L. told Movant she did not want "it" to happen, so Movant did nothing. The following morning, Movant entered M.L.'s room and told her she "was going to be his"

---

[2] There were two jury trials in this case. The first trial occurred in October 2015 and resulted in a hung jury. The second trial, in July 2016, resulted in Movant's convictions on the aforementioned charges.

and that they would be married. Movant took the 14-year-old M.L. to a barn and forced her to have intercourse with him.

A.A. is M.L.'s younger sister. On the night before A.A.'s eighth grade graduation, Movant approached A.A. and told her that he needed to explain her body to her and "show [her] the ways of the world." On the day after A.A.'s eighth grade graduation, Movant called A.A. into his bedroom and said he wanted to give her "a gift [she] would never forget." Movant undressed A.A., pinned her hands above her head, and forced her to have intercourse with him.

About a year later, A.A. was not feeling well and was resting in her bedroom. Movant came in and told her sex would make her feel better. Movant put his hands in A.A.'s pants and rubbed her vagina.

After a hotline call was made to the Children's Division (Division), an investigator and a Dent County sheriff's deputy went to Movant's home. While they were at the home, Movant pulled into the driveway and denied the allegations of sexual abuse. The following day, Movant called the Division investigator and threatened to destroy evidence. Movant later refused to cooperate with the Division and told a service worker to leave his property.

Officers obtained an arrest warrant for Movant and a search warrant for Movant's trailer. The trailer was searched, and officers located a tube of cinnamon lubricant in his bedroom. A.A. testified that Movant had a bottle of cinnamon lubricant that he wanted to use on her. Officers also located lingerie that was too small for Movant's girlfriend. Officers further located a computer bag containing a laptop computer and a CD with a letter stored on it. The computer bag, laptop and CD were found in Movant's bedroom.

Movant was interviewed by Deputy Rodney Jackson (Deputy Jackson). He conducted Movant's police interview. Deputy Jackson recorded the interview using a microcassette recorder with which he was unfamiliar. The interview lasted about three hours, but 70 minutes were not recorded. During the interview, Deputy Jackson recalled admissions by Movant that he and M.L., who was 17 years old at the time, had engaged in some "heavy petting and necking" in her bedroom. Movant said M.L. was "trying to christen her bedroom." There was another episode in Movant's bedroom a couple of months later. Movant explained that heavy petting "was like a poodle on your leg, bumping and grinding, polishing your belt buckle." Movant denied having intercourse with either M.L. or A.A. When Movant made these statements, the first side of the cassette tape was full, and the recorder had stopped running. Once Deputy Jackson realized the tape-recording had stopped, he took a break. He flipped the tape over and covered Movant's admissions about his interactions with M.L. again, so that they would be on the recording. After the interview, Deputy Jackson transferred the cassette tape to Deputy Wayne Becker (Deputy Becker). He created a digital file of the recording (hereinafter referred to as the audio recording). Deputy Jackson listened to the entire audio recording and confirmed it accurately reflected what took place during the interview.

M.L. and A.A. were removed from Movant's residence. Some of M.L.'s belongings were left there, including an "Ag record book" (Ag book) used for her high school Agriculture class. Thereafter, the Division conducted a family support team (FST) meeting. M.L. and Movant were among those who attended the meeting. During the meeting, Movant passed a note to M.L.[3] The note instructed M.L. to check her Ag book.

---

[3] At trial, Movant admitted that he passed a note to M.L. during the FST meeting.

M.L. had recently been given her Ag book by another student, who had received it from Movant. Inside the Ag book, M.L. located a typed letter she believed was from Movant. The caption of the letter stated:

**WARNING WARNING WARNING WARNING WARNING WARNING READ THIS INFORMATION AND DESTROY IMMEDIATELY. DO NOT GET CAUGHT WITH THIS !!!!!!!!!!!!! VERY IMPORTANT !!!!!!!!!!**

The letter mentioned the allegations made by M.L. and A.A. and referred to M.L.'s cat, which had remained at Movant's residence. The letter instructed M.L. to talk with A.A. and immediately destroy the letter. M.L. believed the letter was sent from Movant because "[t]here was very specific details, pet information, what [she] had done with a bedroom that was [hers], and family members' names[.]" M.L. interpreted the letter to mean that she "should remain silent about everything that was going on. That it wasn't anybody else's business and that in order to keep my family together [she] should keep [her] mouth shut." This message was similar to statements Movant had previously made to M.L.

Deputy Becker was one of the officers who had searched Movant's residence pursuant to the search warrant. Deputy Becker had 28 years of IT work experience and training as a certified forensic examiner. He performed a search on the laptop seized from Movant's bedroom and located a piece of the "WARNING WARNING WARNING" letter given to M.L. This artifact indicated that the letter was printed from the laptop, but the document had not been saved on it. A copy of the entire letter was contained on the CD found in the computer bag.

5

At trial, five exhibits offered by the State were admitted in evidence and published to the jury. Exhibits 1 and 2 were pictures of M.L. and A.A. taken on June 14, 2006, before their interviews at the Child Advocacy Center (CAC). Division investigator Anna Tucker, who observed the CAC interviews of M.L. and A.A., laid the foundation for admission of these two exhibits. She testified that the pictures fairly and accurately showed the girls' appearance on that day. Exhibit 3 was the two-page letter M.L. found in her Ag book. M.L. laid the foundation for admission of this exhibit. She testified that she found the letter in her Ag book, and she explained how she knew it was from Movant. Exhibit 4 was a photograph of the bottle of cinnamon lubricant. The foundation for admission of this picture was laid by Deputy Becker, who found and photographed the lubricant. Deputy Becker testified that the picture fairly and accurately showed the lubricant bottle. Exhibit 5 was a USB thumb drive containing a digital copy of the audio recording of Movant's police interview. The foundation for admission of this exhibit was laid by Deputy Jackson, who conducted the interview. Exhibit 5 was admitted and played for the jury.

During Movant's case-in-chief, Movant testified on his own behalf. No additional exhibits were offered. During deliberations, the jurors asked to see Exhibits 1-3. The court suggested sending all five exhibits to the jurors. Defense counsel objected to sending Exhibit 4 (photo of lubricant bottle) and Exhibit 5 (USB thumb drive of the audio recording). The court overruled the former objection and sustained the latter. The court sent Exhibits 1-4 to the jury.

The jury convicted Movant of forcible rape, statutory sodomy in the second degree, and statutory rape in the second degree. The court sentenced Movant to serve 25 years on the forcible rape conviction, seven years on the sodomy conviction, and seven years on the

statutory rape conviction, with all sentences to run consecutively. As noted above, Movant's convictions and sentences were affirmed on direct appeal. *Miller*, 531 S.W.3d at 92-93. The only issues raised on appeal were the trial court's actions in accepting the verdicts and in sending exhibits to the jury during deliberations. *Id*.

### Rule 29.15 Proceeding

After Movant filed an original Rule 29.15 motion, a public defender was appointed to represent Movant. Movant's counsel timely filed an amended Rule 29.15 motion.[4] The amended motion alleged, *inter alia*, that trial counsel had been ineffective because he: (1) failed to object and request a mistrial when the State presented inadmissible evidence of the laptop and CD that had been ordered suppressed by the trial court; and (2) failed to vigorously litigate and obtain a ruling before trial on the Motion to Exclude All Evidence. The relevant facts from the evidentiary hearing are summarized below.

<u>Claim 1 – Failure to Object to Deputy Becker's<br>Testimony about the Laptop and CD</u>

In October 2012, one of Movant's attorneys filed a motion to suppress the laptop and CD, which had been seized pursuant to a warrant to search Movant's trailer. The motion alleged that Deputy Becker's forensic review of the laptop required a new search warrant to be issued. Because the prosecutor at the time did not intend to introduce evidence of the contents of the laptop or the CD, no evidentiary hearing on the motion was conducted. The motion was sustained by consent. After the attorney who filed the motion was permitted to withdraw, attorney Wayne Williams (Attorney Williams) was appointed to represent Movant.

---

[4] This Court has independently verified the timeliness of Movant's post-conviction motions. *See* **Moore v. State**, 458 S.W.3d 822, 825-26 (Mo. banc 2015).

During the second trial, Deputy Becker testified about the seizure of the computer bag, laptop and CD from Movant's home, and what was found on them. Attorney Williams did not object to that part of Deputy Becker's testimony. Attorney Williams knew the motion to suppress had been granted, but he made a conscious decision not to object for the following reason:

> [Movant] is not a sophisticated individual, not taking anything away from him, no disrespect to him, but he testified at the trial. He seemed to be a very simplistic man. He seemed to be – and I recall at one of the trials, he wore overalls – dirty overalls during the trial. He testified about operating backhoes and things of that nature. Nothing wrong with that, however, I thought a jury would probably wonder whether he could operate a notebook and pencil, much less a sophisticated instrument like a laptop and burn things to a CD. And our argument was going to be that other people in the house who also had access to the laptop and the CD would have pursued those things and could have done that to further their efforts to get [Movant] out of their lives, as he was a very difficult person to live with, at a minimum.

Attorney Williams opined that no reasonable jury would believe Movant "could operate a laptop and burn documents to a CD and do those types of things that – it looked exactly contrary to what he could do through his testimony and demeanor at the trial."

As to Claim 1, the motion court concluded that: (1) Attorney Williams' strategic decision not to object to the previously suppressed evidence was not reasonable; and (2) a reasonable "possibility" exists that the result of Movant's trial would have been different had counsel timely objected.

### Claim 2 – Failure to Litigate and Obtain a Ruling on the Motion to Exclude All Evidence

Prior to the first trial, one of Movant's earlier defense attorneys filed the Motion to Exclude All Evidence. The motion alleged that: (1) there were numerous chain-of-custody issues with various items of evidence kept in the Dent County evidence room; and (2) the

8

trial court could not be reasonably assured that no alteration or tampering with evidence had occurred. The court held a hearing on the motion prior to the first trial, during which it was determined that the defense attorney had a conflict of interest. The hearing terminated when the attorney asked to withdraw.

Attorney Williams renewed the motion on October 26, 2015, at the pretrial conference for the first trial. He argued that, due to chain-of-custody issues, the court could not be reasonably assured that items had not been removed, altered, or subject to tampering while in the evidence room. The trial judge took the motion with the case.

During the evidentiary hearing on Movant's amended motion, the defense attorney who filed the Motion to Exclude All Evidence said he was trying to keep out as much evidence as possible, but he acknowledged that Movant:

> still had the problems with the girls testifying and the confession. But those
> – by keeping this out I could limit the amount of damage that comes out at
> a trial, and that's ultimately one of your goals as a defense attorney. So I
> can't say that keeping all this out would have allowed him to win, because
> you still had the girls and the confession, which were more problematic.

As to Claim 2, the motion court concluded that: (1) the evidence established several chain-of-custody issues and evidence-integrity issues with the items seized from Movant's trailer and used against him at trial; and (2) a reasonable probability existed that the outcome of the trial would have been different if all evidence in the evidence room had been excluded.

**Standard of Review**

As our Supreme Court stated in ***Hosier v. State***, 593 S.W.3d 75 (Mo. banc 2019):

> "This Court reviews a post-conviction relief motion for whether the motion
> court's findings of fact and conclusions of law are clearly erroneous."
> *Forrest v. State*, 290 S.W.3d 704, 708 (Mo. banc 2009); *accord* Rule
> 29.15(k). "A judgment is clearly erroneous when there is a definite and firm

9

impression that a mistake has been made after reviewing the entire record."
*Forrest*, 290 S.W.3d at 708 (quotation marks omitted).

*Hosier*, 593 S.W.3d at 81.

The two claims at issue on appeal each alleged that Movant received ineffective assistance of counsel. To prevail, Movant had to satisfy a two-pronged test, as summarized in *Jones v. State*, 631 S.W.3d 682 (Mo. App. 2021):

> First, the movant must "show that counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. at 689, 104 S.Ct. 2052. Second, the movant must show that trial counsel's failure prejudiced him. *Id*. at 687, 104 S.Ct. 2052. To satisfy the prejudice prong under the *Strickland* test, movant is required to show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Anderson v. State*, 196 S.W.3d 28, 33 (Mo. banc 2006).

*Jones*, 631 S.W.3d at 685-86. If the court can dispose of an ineffectiveness claim because of a lack of sufficient prejudice, then that course should be followed. *Esters v. State*, 554 S.W.3d 918, 924 (Mo. App. 2018).

**Discussion and Decision**

*Point 1*

In the State's first point, it contends the motion court erred in granting relief on the claim that Attorney Williams should have objected to testimony from Deputy Becker about what he found on the laptop and CD recovered from Movant's trailer. The State argues that Movant failed to prove he was prejudiced. We agree.

As noted above, post-conviction relief based upon ineffective assistance of counsel cannot be granted unless a movant proves that he or she was prejudiced by counsel's

10

deficient performance. ***Anderson v. State***, 564 S.W.3d 592, 601 (Mo. banc 2018). "Prejudice occurs when there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ***Id***. (internal citation omitted). Here, the motion court concluded there was only a reasonable *possibility* that exclusion of Deputy Becker's testimony about the computer and CD would have changed the outcome of the proceeding. Our review of the entire record supports that conclusion. The primary proof of Movant's guilt came from the testimony of M.L. and A.A. Each one testified about Movant's unusual statements and the peculiar timing of the sexual assaults committed. M.L. also provided direct testimony to support the admission of Exhibit 3, which she identified as a letter from Movant asking her to say nothing about the sexual assault. Deputy Becker's testimony merely provided cumulative evidence that tended to show the possibility Movant wrote and printed Exhibit 3. Attorney Williams' failure to object to this cumulative evidence does not result in prejudice, even if the trial court would have sustained the objection. ***Farr v. State***, 408 S.W.3d 320, 323 (Mo. App. 2013). The State's first point is granted.

*Point 2*

In the State's second point, it contends the motion court erred in granting relief on the claim that Attorney Williams should have vigorously litigated and obtained a ruling on the Motion to Exclude All Evidence. The State argues that Movant again failed to prove prejudice because the evidence covered by that motion was independently verified, so a chain of custody was not required. We agree.

First, we note that the claim as alleged does not even state a ground for relief. It hypothesizes that Attorney Williams' performance was deficient because he failed to

11

vigorously litigate and obtain a ruling on the Motion to Exclude All Evidence. This allegation is deficient because, assuming Attorney Williams did vigorously litigate the motion and it had been denied, nothing about the trial would have changed. The implied premise of the claim is that the trial court would have granted the motion. That premise is false because the Motion to Exclude All Evidence only raised the chain-of-custody issue. To the extent the motion sought to exclude evidence which did not require such proof for admission, it would have been error for the trial court to grant the motion and exclude that evidence. *See State v. Brown*, 584 S.W.2d 413, 415 (Mo. App. 1979) (trial court properly admitted videotape; defense counsel's objection was too broad). In any event, Attorney Williams did argue this motion prior to the first trial, and the judge took the motion with the case. Since the same judge presided over the second trial, there is no reason to expect the ruling to have been different if Attorney Williams had argued the motion again. The judge's ruling was sound because the Motion to Exclude All Evidence only challenged evidence requiring chain-of-custody proof for admission. Therefore, it was functionally a motion in limine. As such, any ruling by the trial court would have been interlocutory and subject to change at trial. *See State v. Clay*, 533 S.W.3d 710, 719 (Mo. banc 2017).

Second, the Motion to Exclude All Evidence posited chain-of-custody issues with all evidence in the Dent County evidence room. The motion court concluded that there was a reasonable probability the outcome of the case would have been different if all that evidence had been excluded. Based on our review of the entire record, the motion court's conclusion lacks evidentiary support. There were only five exhibits admitted during the second trial. None of those exhibits required chain-of-custody evidence as a foundation for admission.

12

Exhibits 1, 2 and 4 were photographs. The foundational requirements for admission of a photograph applied.

> A photograph cannot be admitted unless there is evidence authenticating or identifying it. To establish this foundation, "one offering a photograph in evidence must show by extrinsic evidence that the photograph is an accurate and faithful representation of the place, person or subject it purports to portray." *State ex rel. State Highway Comm'n v. Cone*, 338 S.W.2d 22, 27 (Mo. 1960). This showing can be made with testimony from "any witness who is familiar with the scene, object or person portrayed and is competent to speak from personal observation" that the photograph shows what it purports to portray. *Id.*

*Kappel v. Prater*, 599 S.W.3d 189, 193 (Mo. banc 2020). The photographs admitted as Exhibits 1, 2 and 4 were authenticated by persons who testified, based on their personal observations, that each photo fairly and accurately depicted the person or object shown.

Exhibit 3 was the letter M.L. found in her Ag book. The foundational requirements for admission of a document applied. "A document must be authenticated before it can be admitted into evidence." *State v. Abdi*, 611 S.W.3d 536, 540 (Mo. App. 2020). "Courts may rely upon circumstantial evidence to authenticate a writing." *Id*. "So long as sufficient evidence justifies the trial court's admission of evidence as authentic, any weaknesses as to the authenticity of the evidence are for the jury to consider." *Id*. M.L. authenticated Exhibit 3 and explained how she knew it was from Movant.

Exhibit 5 was the audio recording. The foundational requirements for admission of an audio recording applied. Proving chain of custody is a foundational element of such admission, but that element is rendered moot by positive identification of the recording by a person involved in the conversation. *See State v. McFadden*, 369 S.W.3d 727, 753 (Mo. banc 2012); *State v. Wahby*, 775 S.W.2d 147, 154 (Mo. banc 1989). Deputy Jackson, who interviewed Movant and recorded the conversation, listened to the entire audio recording

13

admitted as Exhibit 5 and testified that it accurately reflected what took place during the interview. Moreover, Deputy Jackson testified from memory about the incriminating statements made by Movant. Excluding the recording would not have precluded that testimony. After reviewing the entire record, the motion court clearly erred by granting relief on the second claim. The State's second point is granted.

The motion court's order vacating Movant's convictions and granting him a new trial is reversed. The case is remanded with directions to the motion court to enter an order denying Movant's amended Rule 29.15 motion.


JEFFREY W. BATES, C.J. – OPINION AUTHOR

DON E. BURRELL, J. – CONCUR

MARY W. SHEFFIELD, J. – CONCUR