Al KRANZ, d/b/a Kranz Construction Company, Respondent,

v.

KANSAS CITY, Missouri, a Municipal Corporation, Appellant.

No. KCD 29420.

Missouri Court of Appeals, Kansas City District.

Oct. 30, 1978.

Aaron A. Wilson, City Atty., James A. Burr, Asst. City Atty., Kansas City, for appellant.

Charles R. Svoboda, Fred A. Murdock, Kansas City, for respondent.

Before HIGGINS, Special Judge, Presiding, WELBORN, Special Judge, and PRITCHARD, J.

PRITCHARD, Judge.

Respondent recovered a judgment, pursuant to the verdict of a jury, for $39,300 for additional compensation, above an original contract price, for re-excavation and re-repair of a sewer project.

Appellant's first sub-point of Point I involves Exhibit 23 which compositely sets forth the amounts of respondent's expenses in connection with re-excavation and re-repair. It is contended that there was no evidence that labor, materials and equipment listed in Exhibit 23 were furnished to respondent; that there was no evidence that Exhibit 23 was a true and accurate rendering of the account; that there was no evidence to show the reasonable value of the labor, materials and equipment furnished; and therefore the verdict was not supported by any competent evidence; and "(2) The verdict is contrary to the greater weight of all the evidence." Point II is that the court erred in inserting the words "emergency repairs" in Instruction No. 2, it being an improper modification of MAI 26.-05, making it argumentative. Point III involves contended error in the court's failure to read entire Instruction No. 4 to the jury. The error contended in the giving of Instruction No. 5 is that the evidence shows that some work had been paid for by appellant, and that it instructed the jury to find what, if any, and the reasonable value of labor, materials and equipment furnished to appellant, without excluding previous payments.

Respondent was the lowest bidder for the repair of a sewer line, which had collapsed in 1969, and which served the Blue River Treatment Plant. The line was 24 inches in diameter and was about 20 feet below the surface in the "river bottom". The earth to be excavated was primarily of silt and sand. The water table was about 5 feet below the surface.

The contract, with plans and specifications prepared by appellant, required respondent to excavate the damaged sewer line, and replace the damaged portion; to remove ground water; properly to bed and backfill the new pipe; to backfill the excavation to ground level; to re-pave and re-fence the site; and to clean up the surrounding area. It required that normal sewage flow be maintained during repairs.

Respondent completed all the work in accordance with plans and specifications, except for street re-paving, fence re-installation and site cleanup on Friday, November 14, 1969. He checked the site on Sunday afternoon, November 16, and observed that an 8 inch water main which ran perpendicularly across the excavation and about 4 feet below the surface had ruptured. The following day it was determined that the new sewer line had collapsed. Respondent informed Robert L. Brown, Chief of the Maintenance Division of the Pollution Control Department, of the collapsed sewer line. Brown said, "Well, we will have to get it fixed," and later appellant was told by Pollution Control "we have got to have the line in. You know this was an emergency deal. And this line has got to be done." Appellant's representatives told respondent that they would take up the matter of his compensation for extra work at a later time, but indicated it was up to him to fix it, and told him he would not be paid for the work already performed until he reconstructed the sewer line damage of November 14.

Respondent commenced re-excavation December 1, 1969, using a different method of installing the line pursuant to a letter from Brown of Pollution Control. Although he requested a change order for the repair work, no response thereto was made. The repair project was completed on February 13, 1970, and was accepted by appellant March 19, 1970, and it paid the contract price, plus two minor changes in the amount of $23,081.10.

■ Appellant's first contention that there was no evidence that labor, materials and equipment, shown on Exhibit 23, were furnished it, must be overruled, because appellant admits in its brief that respondent excavated and did the re-repair work, and the transcript is replete with evidence that he furnished the necessary labor, materials and equipment to do so. The real issue presented by appellant is whether there was a true and accurate rendering of the account, and whether evidence was necessary to show the reasonable value of labor, materials and equipment furnished. Exhibit 23 was admitted into evidence without objection or question. Respondent's offer was "MR. SVOBODA: At this time I would like to offer Plaintiff's Exhibit Number Twenty-three as a computation of the charges for extra work performed by the Kranz Construction Company between December 1st, 1969, and February 5th, 1970, on the sewer line, in which charges for extra work are computed in accordance with the formula as set forth as the force account method in the exhibit, Plaintiff's Exhibit Number Two. MR. BURR: I have no objection, Your Honor." In addition to the admission, above, and the other evidence of the furnishing of labor, materials and equipment, counsel's offer into evidence clearly shows that Exhibit 23 was a computation of the charges for the extra work. The exhibit itself shows that computation, broken down into categories: A. Wages, $6,306.09; B. Material, $1,567.54; C. Equipment Rental, $16,100.42; D. Contract Labor, $95.94; total charges, $24,069.99, to which is added E. Fee, $3,859.17 [15% of total charges]; and the total due, $27,929.16. The hours and rates per hour for wages and equipment rental are set forth in Exhibit 23. These computations are substantially in accordance with the contract, Exhibit 2, Section 1903, "Payment

for Extra Work", and Section 1903.3, "Force Account: When work is authorized by Change Order to be done by Force Account, accounting procedures for such work, satisfactory to the Director, shall be installed by the contractor. The final amount to be paid the contractor as full compensation for furnishing all labor, equipment and materials, and for performing such work, shall be the sum of the amounts of cost for each of the following items actually incorporated in or required by the work. A. Wages: [The actual payroll costs plus fringe benefits of all workmen * * *.] B. Material: [Net costs for materials and supplies] C. Equipment Rental: [The rental charges for vehicles, construction machinery and equipment, * * *.] D. Taxes and Insurance: [Payroll taxes, bond premiums, workmen's compensation, social security, etc.]" (Bracketed paraphrasing added.) (On Exhibit 23, "D" is listed as Contract Labor, but this item is not questioned by appellant.) Appellant admitted: "the formula set forth in General Provisions and Covenants paragraph 1903.3 under Force Account sets forth a formula for determining the fair and reasonable value of extra work performed by a contractor." There were in evidence voluminous records of invoices representing expenditures by respondent in the course of the repair work. Exhibit 23 was but a summary of those records. No objection being made to Exhibit 23, it was before the jury for consideration as to whatever value it deemed should be given it, and it was competent to prove the matters set forth therein. See *State ex rel. State Highway Commission v. Cone,* 338 S.W.2d 22, 25, 26 (Mo. 1960). That case holds also that if a party believes that an insufficient or improper foundation of a summary of voluminous records was made, an objection should be made to the offer in evidence of the summary, otherwise the question is not preserved for review. Appellant here did not question the veracity of Exhibit 23, or any foundation of any records upon which it was based. But more importantly to the issue of whether respondent should have produced evidence of the fair and reasona-

ble value of his charges is the case of *Haughton Elevator Co. v. C. Rallo Contracting Co.,* 395 S.W.2d 238, 245[7–9] (Mo.App. 1965), where it was said: "The contract provided that under the conditions encountered [requiring extra work] the contract price would be increased by the actual cost of labor and material, plus 10% and 10%. The law is well settled that where a contract contains an express stipulation as to the amount of compensation to be paid for its performance, such stipulation is conclusive on the parties and determines the amount of recovery. 17A C.J.S. Contracts § 362, p. 366; *Isaac T. Cook Company v. Bank of St. Louis,* Mo.App., 297 S.W.2d 607. * * * It is the general rule that in an action in an express contract where the amount of compensation is fixed, evidence of the reasonable value of the services rendered under the contract is inadmissible. [Citing cases]"; and notably the quotation from 17A C.J.S. Contracts § 601, p. 1174: "'* * * Thus, where price to be paid for work performed is ascertained by a method of measurement specified by the contract, it is not open to one party to the contract to introduce evidence as to another method of measurement for the purpose of showing that a different price should be paid.'" See also 17 Am.Jur.2d Contracts, § 82, p. 423, "Where the contract appoints the mode of determining the price, and the price is determined according to that mode, the contract becomes perfect and complete in that respect, as if it had been originally fixed in the writing."

Appellant's cited cases may be distinguished. In *Curators of University of Missouri ex rel. Shell-Con, Inc. v. Nebraska Prestressed Concrete Co.,* 526 S.W.2d 903 (Mo.App.1975), Shell-Con conceded that invoices were estimates at the time they were written and did not reflect actual work completed at the end of a particular month, and the invoices were indefinite and unexplained. In *Bybee v. Dixon,* 380 S.W.2d 539 (Mo.App.1964), there was no evidence that materials listed in a lien account were fair and reasonable charges, as contrasted here to the conceded fact that the method of

computing charges for extra work was fair and reasonable, which resulted in the composite summary, Exhibit 23, being admitted without objection. Neither of these cases involved a formula for computing the compensation due.

■ The second portion of Point I is without merit because this court does not weigh the evidence in a case tried to a jury. *Herrman Lumber Co. v. Cox*, 521 S.W.2d 4, 5[1, 2] (Mo.App.1975), and cases cited and quoted.

■ As to inclusion of the words "emergency repairs" in Instruction No. 2, it was without doubt a departure from MAI 26.05, and thus is error. It is not comparable, however, to the abolished (MAI 1.04) inclusion of "sudden emergency" instructions, which are applicable only to negligence cases. The evidence here clearly shows, as the jury could find, that there was an emergency requiring immediate repairs because of the ruptured water line which caused the collapse of the sewer line. The words "emergency repairs" were not argumentative, under the facts here, as contended. There was no dispute that an emergency in the sense of requiring immediate repairs existed. Respondent perhaps assumed an unnecessary burden by the inclusion of the words. In any event, no prejudice to appellant is apparent, and the point is overruled.

■ The fourth point pertains to the failure of the trial judge completely to read the entire Instruction No. 4 to the jury. The transcript shows this "(The following sentence was included in the instruction taken by the jury to the jury room but was not read by the Court.) If the evidence in the case does not cause you to believe a particular proposition submitted or if you are unable to form a belief as to any such proposition, then you cannot return a verdict requiring belief of that proposition. (MAI–3.01 Plaintiff)" This omitted sentence applies equally to respondent and appellant and the omission to *read* it to the jury before it retired could not be more prejudicial to one than to the other. Besides, the jury took with it the entire instruction to

the jury room where it will be presumed to have been considered in its entirety in reaching the verdict. The point is overruled.

■ The gist of appellant's last point is that Instruction No. 5, on damages, failed to exclude cost of paving and fence installation for which respondent had already been paid. Suffice it to say that the jury could not have been misled nor appellant prejudiced. The jury's verdict, without interest, was $29.16 less than the total amount shown to have been due by Exhibit 23 for the extra work. That exhibit was before the jury without objection, and it is ruled above that no other evidence as to reasonable value of the work was necessary in view of the "force account" provisions.

The judgment is affirmed.

All concur.