**W.E. KOEHLER CONSTRUCTION COMPANY, INC.,**
Plaintiff/Appellant,

v.

**MEDICAL CENTER OF BLUE SPRINGS, et al.,**
Defendants/Respondents.

No. WD 34072.

Missouri Court of Appeals,
Western District.

April 24, 1984.

Arthur B. Federman, Kansas City, for plaintiff/appellant.

Stephen G. Mirakian, Kansas City, for defendants/respondents.

Before SOMERVILLE, P.J., and NUGENT and LOWENSTEIN, JJ.

NUGENT, Judge.

Plaintiff, W.E. Koehler Construction Company, Inc., and defendant, Medical Center of Blue Springs, a Missouri limited partnership, entered into a written construction contract and plaintiff brought an action for breach of a later and related oral agreement. After a jury verdict for $46,-875.00 was returned in favor of plaintiff, the court sustained defendant's motion for judgment notwithstanding the verdict and alternatively awarded a new trial on the ground that the verdict was against the weight of the evidence. Plaintiff appeals. We affirm the trial court's entry of judgment notwithstanding the verdict.

In ruling on a judgment entered for the defendant notwithstanding the verdict, we consider only the evidence favorable to the verdict and the reasonable inferences derived from that evidence, and disregard the defendant's evidence except insofar as it aids the plaintiff's case. *Murski v. Sportsman Cycles, Inc.*, 559 S.W.2d 67, 68 (Mo.App.1977).

Viewed in this light, the evidence was as follows. In August, 1977, defendant issued an invitation to bid for the construction of a new building for Medical Center of Blue Springs. Plaintiff submitted its bid of $535,835 on September 20, 1977, with the obligation and understanding that such bid was to remain open and firm for sixty days. In computing its bid, plaintiff, mindful of increases in construction costs at that time, relied upon the representation that a contract would be executed and work would commence within sixty days. No contract was entered into within the sixty days.

Mr. Koehler, the president of Koehler Construction, testified that in early February, Mr. Champlin, the architect, Dr. William Whitley, a representative of defendant,[1] and defendant's attorney met with him to see if plaintiff was willing to honor its September 20 bid. Plaintiff was no longer bound to do so, the sixty days having long since expired. At the meeting, Mr. Koehler said, "At this point in time, we can't go ahead with this bid without some way of recouping our losses, but if the architect and I have all latitudes to change materials, methods of construction, I can hold by bid firm." He testified that the parties then "orally agreed that Koehler and the architect would have all latitude to make changes as we could see fit that would not change the integrity of the building or the function ... or the appearance ...." The parties did not put this agreement in writing, fearing that "it would effect the financing." Plaintiff did, however, introduce into evidence a copy of its February 2, 1978 letter to the defendant, the architect and to defendant's attorney, which put "on record" the oral agreement.

On February 21, 1978, a written contract was entered into between the plaintiff and defendant limited partnership for the construction of the medical center building. Although Mr. Koehler realized that nothing regarding the substitution of materials was put into the written contract, he testified that he entered the written contract because he believed that the parties' prior oral agreement was part of the agreement he was then entering.

---

1. Dr. Whitley, Dr. Robertson and Dr. Rosenblat each own a one-third interest in Medical Center of Blue Springs, Inc. That corporation is the general partner of Medical Center of Blue Springs. Plaintiff sued both the limited partnership and the general partner, but the corporate general partner never filed an answer so far as the record on appeal shows. The case proceeded to trial against the limited partnership.

The written contract is entitled "Standard Form of Agreement Between Owner and Contractor" and is approved by the American Institute of Architects. Article 1 of the agreement is entitled "The Contract Documents." The following is printed under Article 1:

> The Contract Documents consist of this Agreement, the Conditions of the Contract (General, Supplementary and other Conditions), the Drawings, the Specifications, all Addenda issued prior to and all Modifications issued after execution of this Agreement. These form the Contract, and all are as fully a part of the Contract as if attached to this Agreement or repeated herein. An enumeration of the Contract Documents appears in Article 7.

The following is printed under Article 7:

> 7.2 The Contract Documents, which constitute the entire agreement between the Owner and the Contractor, are listed in Article 1 and, except for Modifications issued after execution of this Agreement, are enumerated as follows: (List below the Agreement, the Conditions of the Contract (General, Supplementary, and other Conditions), the Drawings, the Specifications, and any Addenda and accepted alternates, showing page or sheet numbers in all cases and dates where applicable.)

Pursuant to 7.2, the following is typed and hand-printed insertion appears:

> Agreement, dated *February 21, 1978*, by and between Owner and Contractor; Specifications, by Robert E. Champlin, Architect, and Leon B. Carlson & Associates, Engineers; Architectural Drawings, dated August 24, 1977; Mechanical Drawings dated August 29, 1977, and Revised Drawings 1, 3, 5, 7, 9, 11, 13, 14, E–1, M–1, M–3, and M–4, dated October 11, 1977, and Revised Drawing 4, dated February 6, 1978; Bid Proposal by Contractor.

On the first page of the printed A.I.A. form entitled "General Conditions of the Contract for Construction," the following standard integration clause appears:

> This Contract represents the entire and integrated agreement between the parties hereto and supersedes all prior negotiations, representations, or agreements, either written or oral.

The contract also authorizes later changes in the work by written change orders.

The essential terms of the written contract were that defendant would pay plaintiff a contract sum, based upon plaintiff's bid proposal of $535,835, for erecting the medical center according to the specifications and drawings. No provision for substitution of materials is included in any of the contract documents.

In late March or early April, while plaintiff was on the job site after he had begun work on the medical center, defendant informed plaintiff that no changes in the construction (other than drain pipe and duct work changes) would be allowed unless accompanied by written change orders as the contract permitted. Plaintiff testified that "as far as he was concerned" this made the contract "null and void," because he was "induced to sign the original" contract, because he thought he "could make changes in the materials and methods of construction." When Mr. Koehler threatened to leave the job, Dr. Whitley suggested that "there must be some way we can work this out." The parties then orally agreed that if plaintiff would finish construction of the building in accordance with the written contract, defendant would allow plaintiff to do any and all additional work on the lower unfinished level of the building at any time in the future at a reasonable price. That agreement was never put into writing and no plans existed at the time the agreement was made for any specific additional work to complete the additional 10,500 square feet on that level.

The plaintiff finished the building in accordance with the written contract. The defendant performed its side of the written agreement. What plaintiff complains of is defendant's use of another contractor for later construction of a dental suite and finish work on the lower level. Defendant

has also informed plaintiff that it does not intend to give plaintiff any further additional work in the building. Plaintiff alleges that this is also a breach of the oral agreement. At the time of trial, however, no plans for the lower level existed.

Plaintiff sued defendant for breach of the oral agreement, seeking damages with respect to the dental suite and finish work which were performed by another contractor. In addition, plaintiff sought damages for loss of any future work on the remainder of the ground floor. After the close of plaintiff's evidence, defendant moved for a directed verdict. The court denied defendant's motion and defendant offered no evidence. The jury returned a verdict in favor of plaintiff for $46,875. Defendant moved for judgment notwithstanding the verdict, or, in the alternative, for a new trial, and the trial court sustained defendant's motion for the "reasons set forth therein."

The grounds asserted in defendant's motion were essentially that (1) the agreement sued upon was so lacking in essential terms as to be wholly unenforceable; (2) the agreement sued upon was not supported by consideration; and (3) the verdict of $46,875 was contrary to the weight of the evidence in that the only evidence of damages before the jury was in the amount of $8,427. Plaintiff asserts on appeal that the trial court erred in granting defendant's motion for judgment notwithstanding the verdict and in finding in the alternative that a new trial should be granted.

■ Because we affirm the trial court's grant of defendant's motion for judgment notwithstanding the verdict, we need not address plaintiff's second point on appeal. This court will affirm a trial court's grant of judgment notwithstanding the verdict if any one of the grounds raised by a defendant in its motion and preserved on appeal is sufficient to support a judgment in that defendant's favor. *Stix Friedman and Company Inc. v. Fidelity and Deposit Company of Maryland*, 563 S.W.2d 517, 521 (Mo.App.1978).

Plaintiff contends that the oral agreement sued upon was supported by consider-ation and that the agreement contained all essential terms and as such was enforceable. Because we find that the oral agreement lacked consideration, we need not address the issue whether the agreement is too indefinite and vague to be enforceable.

The agreement plaintiff sued upon was that defendant would allow plaintiff to do any and all future work on the ground level if plaintiff would complete the construction according to the written contract.

■ While either detriment to the promisee or benefit to the promisor can constitute consideration sufficient to support a contract, *Wells v. Hartford Accident and Indemnity Co.*, 459 S.W.2d 253, 260 (Mo.1970) (en banc); *Leeson v. Etchison*, 650 S.W.2d 681, 684 (Mo.App.1983), no detriment was suffered by plaintiff nor benefit conferred on defendant by plaintiff's promising to complete the building pursuant to the written contract. Plaintiff had a pre-existing duty under the terms of the February 21 written contract to complete construction of the building according to its terms. By later promising defendant that it would perform in accordance with the written contract in exchange for defendant's promise to award plaintiff all future work, plaintiff was doing only what it was already obliged to do. *See Rexite Casting Co. v. Midwest Mower Corp.*, 267 S.W.2d 327 (Mo.App.1954). To hold that plaintiff's promise constitutes consideration would "run afoul of a widely accepted principle that a promise to carry out an already existing contractual duty ... does not constitute consideration." *C & M Developers, Inc. v. Berbiglia, Inc.*, 585 S.W.2d 176, 190 (Mo.App.1979).

Plaintiff argues that it suffered a detriment and conferred a benefit on defendant by its promise to complete the building under the written contract (which did not provide for substitution of materials) because plaintiff in doing so gave up its right to use substitute materials under the parties' prior oral agreement.

■ Plaintiff's argument ignores the effect of the parol evidence rule. Under the

parol evidence rule, evidence of prior or contemporaneous agreements which varies or contradicts the terms of an unambiguous and complete written instrument are not admissible absent fraud, accident or mistake. *Craig v. Jo B. Gardner, Inc.,* 586 S.W.2d 316, 324 (Mo.1979) (en banc); *State Bank of Fisk v. Omega Electronics, Inc.,* 634 S.W.2d 234, 237 (Mo.App.1982); *South Side Plumbing Co. v. Tigges,* 525 S.W.2d 583, 588 (Mo.App.1975).

■ Where, as here, the written contract expressly provides that the contract documents (printed in Article 1 of the agreement and specifically enumerated in Article 7) plus any additional written modifications after execution of the agreement "constitute the entire agreement," the intention of the parties to create a complete and unambiguous contract is on the face of the agreement. *See South Side Plumbing Co. v. Tigges, supra,* at 588. Where the first page of one of the contract documents states that "[t]his contract represents the entire and integrated agreement between the parties hereto and supersedes all prior negotiations, representations, or agreements either written or oral," we must conclude that the parties intended that all prior and contemporaneous agreements be merged into the contract. The clear and unambiguous language of the contract *requires* the plaintiff to construct the building according to the specifications and drawings. The unambiguous written document stating that its terms include the entire agreement of the parties, subject to later written modifications, nowhere allows for the substitution of materials or goods.

■ The consideration which supported the written contract was plaintiff's promise to perform according to the above terms and defendant's promise to pay plaintiff the specified amount. That is sufficient consideration to support the written contract. Although plaintiff was not required to hold his bid firm after sixty days, he chose to do so and then entered into a valid and binding written contract with the defendant. The prior oral agreement allowing plaintiff to substitute goods and materials if he would hold his price firm, varies the terms of the written contract and, therefore is inadmissible parol evidence. The parol evidence rule is a rule of substantive law and not a rule of evidence, and evidence offered in violation of it must be ignored. The case must be decided on the basis of the written agreement alone. *Commerce Trust Co. v. Watts,* 360 Mo. 971, 231 S.W.2d 817, 820 (1950); *State Bank of Fisk v. Omega Electronics, Inc., supra,* at 237. Thus, evidence of the prior oral agreement between plaintiff and defendant is inadmissible and plaintiff's argument that consideration for the second oral agreement was to be found in his giving up rights under the first oral agreement is in error. Plaintiff suffered no detriment and defendant received no benefit when plaintiff promised to complete the building pursuant to the written contract if defendant would allow plaintiff to do any and all future work on the ground floor of the medical building.

Defendant relies on *Julian v. Kiefer,* 382 S.W.2d 723 (Mo.App.1964), a case factually similar to this case. There, plaintiff, a contractor, entered into a written contract for construction of the defendants' house. The written contract was on a standard form approved by the American Institute of Architects. The terms of the contract were quite similar to the terms of the contract here. Fearful that he would lose money on the contractor's bid, Julian informed the Kiefers before he signed the contract that he anticipated use of "cheaper materials than specified ...." *Id.* at 727. Julian testified that he discussed "these changes with defendants and their architect both prior to and after the signing of the contract ...." He further testified that "they accepted his bid with the understanding that he was at liberty to 'cut off everything that ... [he] could cut off' from the architect's plan in order to build the house for the sum of ... [his bid price]." *Id.* That prior oral agreement was not reflected in the written contract. When the Kiefers refused to allow Julian to deviate from the plans and specifications dur-

ing construction, Julian lost money on the job and sued the Kiefers in quantum meruit, contending that the alleged oral agreement was binding upon the parties. The court held at 727 that "it is elementary that any discussions, negotiations or agreements by the parties before entering into the written contract are merged and consolidated into that undertaking." Plaintiff's reliance on *Julian v. Kiefer* is misplaced.

To recover for breach of contract, the plaintiff must prove that the agreement was supported by consideration. As a matter of law, the agreement sued upon by plaintiff, the second oral agreement, was not supported by consideration. We hold therefore that the trial court did not err in granting defendant's motion for judgment notwithstanding the verdict. Accordingly, we affirm the judgment.

All concur.