The charge was not proven. The defendant is discharged.

All concur.

**DON GASTON & SON, INC., d/b/a Don Gaston Construction Co., Plaintiff-Appellant,**

v.

**VIC KOEPKE EXCAVATING & GRADING COMPANY, Defendant-Respondent.**

**No. WD 35792.**

Missouri Court of Appeals, Western District.

June 18, 1985.

William J. Raach, Clayton, for plaintiff-appellant.

Ilus W. Davis, Christopher J. Anderson, Donald G. Scott, Dietrich, Davis, Dicus, Rowlands, Schmitt & Gorman, Kansas City, for defendant-respondent.

Before TURNAGE, C.J., and MANFORD and LOWENSTEIN, JJ.

TURNAGE, Chief Judge.

Don Gaston & Son, Inc., d/b/a Don Gaston Construction Co., brought suit against Vic Koepke Excavating & Grading Company to recover sums allegedly due under a contract. The jury returned a verdict in favor of Gaston for $200,000. Gaston remitted $21,158.47 and agreed that judgment could be entered for the balance. The court sustained Koepke's motion for judgment notwithstanding the verdict and conditionally granted Koepke a new trial on the ground that the verdict was against the weight of the evidence. Judgment n.o.v. reversed and grant of new trial affirmed and cause remanded.

Koepke contracted with Daniel International Corporation (Daniel contract) for the excavation and grading of a 4.7 mile railroad spur in connection with the construction of the Callaway Nuclear Power Plant, owned by the Union Electric Company. Koepke then subcontracted with Gaston (Gaston subcontract) for Gaston to drill and blast all of the rock along the grade of the 4.7 mile spur. Koepke performed the grading and excavating and hauled away the rock after Gaston blasted it. The Gaston subcontract provided for a lump sum payment to Gaston of $193,401, based on the presence of an estimated 154,721 cubic yards of rock to be drilled and blasted. In addition, Gaston was to be paid $750 per day for the blasting of ditch rock.

The Gaston subcontract provided that the Daniel contract and all its subsequent modifications would be a part of the subcontract. The Daniel contract provided that the technical specifications for railroad spur grading would be in accordance with the Missouri Standard Specifications for Highway Construction, 1973 Edition. The Standard Specifications provided that when payment is to be made on a measured quantity basis, the manner of calculating volumes of excavation would be computed from cross section measurements by the average end area method.

After Gaston started work in December of 1975, it became apparent that the estimate of 154,721 cubic yards was too low. Koepke and Gaston amended their subcontract in January of 1976 to provide that Gaston would be paid $1.25 for each cubic yard of rock drilled and blasted above the estimated 154,721 cubic yards. The original contract price was obviously based on the price of $1.25 per cubic yard, even though the contract provided for a lump sum payment. After the amendment, the contract no longer provided for a lump sum payment, but provided for the drilling and blasting of a measured quantity of rock. The provisions in the Daniel contract then became the applicable method to calculate the volume of rock drilled.

After Koepke and Gaston amended their subcontract to provide for payment to Gaston for rock drilled and blasted above the 154,721 cubic yard estimate, Daniel and Koepke amended their contract to explicitly provide that additional rock quantities would be measured by the method contained in the Standard Specifications.

At trial, Gaston made it clear that he would attempt to prove the quantity of rock drilled and blasted by showing the number of loads of rock which Koepke hauled, and by an estimate based on the blasting pattern used by Gaston. Koepke objected that the introduction into evidence of these estimates would violate the parol evidence rule because the Daniel contract specified that the method of calculating the quantity of rock was to be from cross section measurements by the average end area method. The trial court admitted the estimates of the quantity of rock drilled

and blasted by Gaston based on the methods proposed, but limited such testimony to show that there had been "quite a bit of work done" and to show the basis for Gaston's estimates for making billings to Koepke as the work progressed. The court stated that such testimony was not being admitted on the ultimate issue of whether or not the Gaston method of estimating the rock quantity was the computation called for by the contract.

Gaston introduced evidence of both the number of loads hauled by Koepke and his own drilling pattern method to show how he arrived at the estimate that he had drilled and blasted between 251,000 and 254,000 cubic yards of rock. Gaston did not produce any evidence from an engineer or surveyor as to the volume of rock in place which he had drilled and blasted. Gaston did say that he had hired a surveyor to perform such a task, but that he was financially unable to pay the surveyor and therefore never obtained any information from him.

Koepke called a civil engineer employed by Daniel who testified he had been in charge of the survey party that performed the cross sections to measure the quantity of rock in place for the railroad spur. He testified that the survey revealed a total of 183,265 cubic yards of rock. His testimony indicated that this total included the ditch rock, which was subject to a different contract price. No other evidence was presented concerning the amount of rock drilled and blasted.

Gaston contends the court erred in granting judgment n.o.v. because the evidence showed that he was entitled to damages in some amount, and the determination of that amount was for the jury.[1] Koepke asserts the court properly entered judgment for it because Gaston failed to introduce any evidence of the quantity of rock he drilled and blasted which used the aver-

age end area method of measurement as required by the contract. Thus, Koepke contends there can be no finding that Gaston is due any balance.

In reviewing the entry of a judgment n.o.v., this court considers only the evidence favorable to the verdict, together with the reasonable inferences derived from the evidence, and disregards all of the defendant's evidence except as it may aid the plaintiff's case. *W.E. Koehler Construction Co. v. Medical Center of Blue Springs*, 670 S.W.2d 558, 559[1] (Mo.App. 1984). In reviewing the evidence, it is apparent that Gaston did not introduce any evidence of the volume of rock drilled and blasted computed by the contract method.

The court sustained the motion for judgment n.o.v. on the ground that Gaston failed to adduce evidence of damages under the contract. The estimates made by Gaston were not relevant to any issue and were inadmissible because they were not based on the contract method for determining the volume. It is well settled that where the price to be paid for work performed is to be determined by a method of measurement specified by the contract, it is not open to one party to introduce evidence of another method of measurement for the purpose of showing that a different price should be paid. *Kranz v. Kansas City*, 573 S.W.2d 88, 91 (Mo.App. 1978). Gaston's introduction into evidence of estimates not based on the contract measurement must be ignored because the parol evidence rule is a rule of substantive law and not a rule of evidence, and evidence offered in violation of it must be ignored. *Koehler*, 670 S.W.2d at 562[7]. Gaston could have countered Koepke's evidence of volume by testimony based on the contract method but did not do so.

---

1. At trial Gaston's counsel, who was not the same as on appeal, took the position that there was no dispute as to the contract terms. It was his position that the survey measurements were not correct even though no evidence was offered to dispute the survey total. Counsel on appeal argues that Gaston was not bound by the contract method of measurement. Such contention may not be raised for the first time on appeal. *Lincoln Credit Co. v. Peach*, 636 S.W.2d 31, 36[11, 12] (Mo. banc 1982).

■ Even though Gaston did not introduce testimony showing the volume, Koepke did introduce evidence to show that the total volume was 183,265 and Gaston is entitled to take advantage of that since it aids his case. The drilling and blasting of 183,265 cubic yards at $1.25 per cubic yard would amount to $229,081.25. Because Koepke's evidence indicated that the total volume included the ditch rock, the amount Koepke paid Gaston for ditch rock would have to be subtracted from the total price. Gaston testified that he was paid $20,000 for ditch rock, and subtracting that amount from $229,081.25 leaves a balance of $209,081.25 owed to Gaston for drilling and blasting rock at $1.25 per cubic foot. The parties do not dispute the amount paid for ditch rock.

Gaston testified that he had been paid a total of $224,995, which included $20,000 for the ditch rock. This leaves a balance of $204,995 paid for drilling and blasting the rock. Koepke did not introduce any evidence as to the amount paid Gaston, thus Gaston's testimony was uncontradicted. Subtracting the total amount Gaston received ($224,995) from the amount due based on the 183,265 cubic yard measurement ($229.081.25) leaves a balance due Gaston of $4,086.25. Thus it was improper to enter judgment n.o.v. in favor of Koepke when the evidence showed that Gaston was due $4,086.25.

The court granted a conditional new trial to Koepke on the ground that the verdict was against the weight of the evidence. In *Frager v. Glick*, 347 S.W.2d 385, 387[1] (Mo.1961), the court stated that a trial court is vested with an inherent and broad discretion in granting one new trial upon the ground the verdict is against the weight of the evidence, and its ruling will not be disturbed except in case of manifest abuse.

■ In this case the jury returned a verdict for $200,000 when the evidence showed Gaston was only due $4,086.25.[2] It is manifest that the verdict was against the weight of the evidence, and it is further manifest that the trial court did not abuse its discretion in granting a new trial on that ground.

The judgment granting judgment n.o.v. is reversed and the granting of a new trial on the ground that the verdict was against the weight of the evidence is affirmed. This cause is remanded for further proceedings. Rule 72.01(c)(1).

2. The jury undoubtedly considered Gaston's estimate of rock quantity as substantive evidence because no limiting instruction was given. As previously noted, as a matter of law, those estimates may not be considered because they violate the parol evidence rule. Even so, if the jury found Gaston blasted and drilled 254,000 cubic yards at $1.25, the amount due would be $317,500. Subtracting the $20,000 paid for ditch rock and the $209,081.25 Gaston should have received would leave a balance of $88,418.75, far from the $200,000 verdict. No instruction allowed the jury to award pre-judgment interest.