SOUTHGATE BANK & TRUST COMPANY, Respondent,

v.

Enos A. AXTELL, Sr. and Sophronia M. Axtell, Appellants.

No. WD 36876.

Missouri Court of Appeals, Western District.

March 11, 1986.

Paul H. Niewald, Danna F. Brabender, Niewald, Waldeck, Norris & Brown, Kansas City, for appellants.

James F. Davis, Leland H. Corley, Brown, Koralchik & Fingersh, Overland Park, for respondent.

Before TURNAGE, P.J., and DIXON and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

Southgate Bank & Trust Company ("Southgate") brought suit against Enos Axtell and his wife ("Axtell") for a deficiency on a note executed by the Axtells to Southgate. Southgate obtained summary judgment and the Axtells appeal.

The relationship between the parties is complex as it involves extensive business dealings as well as two lawsuits. To understand Axtell's points on appeal the following factual and procedural history is in order.

## FACTUAL HISTORY

Axtell is a real estate developer in Grandview, Missouri. He was the sole shareholder and president of Redwood Hills Development Company ("Redwood"). Redwood was involved in the construction of a motel on South 71 Highway in Grandview. Redwood obtained financing for the project from two sources. The Prudential Insurance Company in November 1972 issued a permanent loan commitment mortgage to Redwood on the project. One of the conditions contained in the Prudential mortgage loan required there could be no mechanics liens against the motel construction project as of the last day available for closing the loan, September 1, 1974. In May 1973 Southgate agreed to provide a construction loan to Redwood and the Axtells for the project. The parties entered into a construction loan agreement and the Axtells executed personal guaranties for Redwood's obligation. Money Southgate paid to a Redwood supplier under this loan is the subject of the counterclaim filed by Southgate in the Axtell suit.

In August 1974 many mechanics liens and materialmen's liens were pending against the motel construction project. The liens would prevent the Axtells from meeting the September 1, 1974 deadline with Prudential. In order to meet that deadline the Axtells requested Chicago Ti-

tle Insurance Company to issue a title insurance policy showing no exceptions for liens. Chicago Title issued the policy but did so only after Chicago Title, Southgate, Redwood and the Axtells entered into an Escrow Agreement. The Escrow Agreement is the basis for Axtell's various claims.

The Escrow Agreement signed by the parties stated Redwood owned the land in question, the permanent lender required there be no liens, and Chicago Title would not show the liens to the lender only because of this agreement. The Escrow Agreement provided that Redwood or Axtell would deposit with Southgate as escrow holder for Chicago Title funds sufficient to pay off any liens. The agreement further provided that Southgate would keep the money on deposit until directed by Chicago Title as to how, when, and to which lien claimant money was to be disbursed. All payments were to be directed by Chicago Title, and if more money were needed, Redwood or Axtell were to immediately supply the funds. The agreement did not call for Southgate to pay interest on the account. In August 1974 pursuant to the agreement Redwood and Axtell deposited some $210,000 in cash in escrow with Southgate as escrow holder. Construction was later completed, the title policy issued, permanent financing issued, and in September 1974 Chicago Title directed certain payments from the escrow account. On October 21, 1974 Southgate closed out the checking account and put the escrow funds in a 30 day certificate of deposit that was allowed to "roll over" and be credited to Redwood. In February 1975 Redwood filed for reorganization under Chapter XI of the Federal Bankruptcy Act. In May 1975 Southgate put the funds back into a checking account. Redwood was adjudicated bankrupt on June 8, 1975; a day later Axtell purchased from Redwood's trustee the remaining balance of the escrowed money.

In October 1976 the Axtells borrowed $100,000 from Southgate. This loan was unrelated to the motel construction project. The note was secured by real estate owned by the Axtells. The note was renewed for $108,000 in October 1977, the new amount representing principal plus accrued interest. It is this note that is the basis for Southgate's claim against Axtell in the suit here on appeal.

By December 31, 1981 all lien claims had been settled to the satisfaction of Chicago Title and the approximately $60,000 still in escrow with Southgate was thereafter released. Axtell's attorney directed Southgate to apply the remaining funds to Axtell's other obligations at the bank, including the $108,000 note which was in default. The land securing this note was sold under the deed of trust in July 1982 to Axtell Development Company for considerably less than the balance due on the note.

## PROCEDURAL HISTORY

On June 15, 1982 Axtell brought suit against Southgate in the Circuit Court of Jackson County. This case will be referred to as the Axtell suit. The Axtell suit alleged breach of contract and breach of fiduciary duty by Southgate based on its failure to pay interest on the escrow account between May 1975 and December 31, 1981 and its failure to apply the released funds according to Axtell's directions. The Axtell suit sought approximately $165,000 in damages on each count.

On July 22, 1982 Southgate brought suit against Axtell in the Circuit Court of Jackson County. This cause, referred to as the Southgate suit, is the one now before the court. In this cause Southgate sought to collect from Axtell the deficiency remaining due under the $108,000 note after the real estate securing the note had been sold and certain "other credits" applied. This petition prayed for approximately $73,000 plus interest and attorney's fees. In his answer Axtell admitted the real estate had sold for less than the amount due on the note. Axtell asserted as a defense he was entitled to an offset because Southgate was obligated to pay interest on the escrow account, and that if Southgate had received interest on the escrow account the debt

balance would have been satisfied in full. Axtell also filed a counterclaim seeking $165,000 for breach of contract and breach of fiduciary duty. The allegations in this counterclaim were identical to the allegations in the petition Axtell filed in the Axtell suit. Axtell later agreed to dismiss without prejudice this counterclaim, leaving only the defense of offset.

In September 1984 Axtell amended the petition in the Axtell suit to add a third count for prima facie tort and to add a claim for $5 million punitive damages on each count. In its answer of October 4, 1984, Southgate specifically denied it had made an agreement to pay interest on the escrow account. Southgate also filed a counterclaim seeking $75,000 for money paid to Redwood's suppliers on the motel construction project. This money had not been paid under the escrow agreement, but had been paid under the construction loan Southgate made to Redwood with the Axtells' personal guaranties. Axtell by reply to the counterclaim admitted the $75,000 was paid by Southgate but denied the allegation of Redwood's refusal and non-payment and that the Axtell's were responsible under the guaranty for the $75,000. It will be assumed Southgate's counterclaim was permissive under Rule 55.32(b) since it did not grow out of the same transaction or occurrence as Axtell's claim. The Axtell petition was on a later escrow agreement, the counterclaim was based on an earlier construction loan. The proof on the counterclaim depended on no facts similar to the petition. Southgate then filed a motion for summary judgment in the Axtell suit on all counts of the amended petition that alleged Southgate had an obligation to pay interest on the escrow account. Southgate contended summary judgment was proper because the escrow agreement made no provision for the payment of interest and the parol evidence rule would bar Axtell from introducing evidence which would alter the agreement.

In the Southgate suit Axtell attempted to re-inject the counterclaim which he had earlier agreed to dismiss and add the claim for prima facie tort and the request for puni-

tive damages that he had filed in the Axtell suit. This request was denied. Southgate then filed for summary judgment contending Axtell's claim of offset was not available as a defense because that claim was the basis of the Axtell suit. Summary judgment was denied.

On February 7, 1985 the trial court in the Axtell suit granted Southgate's motion for summary judgment on the three counts of Axtell's petition which sought damages based on Southgate's failure to pay interest on the escrow account. The trial court did not designate the judgment as final. In the accompanying memorandum the court declared that the escrow agreement was unambiguous and contained no provision for the payment of interest. The court concluded no parol evidence could be offered to alter the terms of the agreement. Axtell had alleged common custom called for interest on these accounts, and that a vice president of Southgate had assured him 2½ points below the prime rate would be paid on the funds.

After summary judgment was granted to Southgate in the Axtell suit, Southgate filed for summary judgment in the case at bar. Southgate contended summary judgment was proper because Axtell's only defense to Southgate's claim for deficiency judgment was that he was entitled to an offset due to Southgate's duty to pay interest on the escrow account, and this defense had been disposed of by the summary judgment granted in the Axtell suit. On March 14, 1985 the trial court, without findings or conclusions, granted summary judgment to Southgate and awarded Southgate $68,-559.98 for principal, $16,480.58 for interest due on the October 1977 note, plus $21,-652.50 for attorney's fees. Axtell has appealed, reiterating his claim that if interest had been paid on the escrow account, the October 1977 note would have been paid in full. Axtell contends the summary judgment entered against him in the Axtell suit was not final, was error, and remains a live issue because the bank's $75,000 counterclaim is still pending and summary judgment in the case at bar was inappropriate

as the defense of offset, based on the interest question, created a genuine issue of a material fact.

## ANALYSIS

■ Under Rule 74.04(c) summary judgment shall be granted if there is no genuine issue as to any material fact and any party is entitled to judgment as a matter of law. This court must review the record in the light most favorable to the party against whom summary judgment was rendered. *Shaw v. Clough*, 597 S.W.2d 212, 213 (Mo.App.1980). The judgment in this case included no findings of fact or conclusions of law. The absence of such findings is of no consequence as review of a summary judgment is the same as review of a court tried or equity case, and if the trial court's judgment is sustainable on any theory the judgment must be sustained. *Snowden v. Northwest Missouri State University*, 624 S.W.2d 161, 165[1] (Mo. App.1981).

■ The respondent Southgate correctly argues the summary judgment granted against the Axtells in the Axtell suit was a final judgment and as such under the doctrine of res judicata precludes a retrying of the interest on the escrow funds claim. Section 512.020 RSMo, 1978 provides for appeal from a final judgment to any party aggrieved by such judgment. The rationale of this statute is that absent specific authority, appeals "do not lie from rulings on motions which do not constitute a final disposition of a claim (cause of action), as cases are not to be brought to appellate courts by appeal in detached portions." *Weir v. Brune*, 364 Mo. 415, 262 S.W.2d 597, 599 [4, 5] (1953).

■ Rule 81.06 specifies exceptions to the general rule with respect to finality of judgments. The emphasized language of Rule 81.06 provides the authority to deem the summary judgment in the Axtell suit final, even though that judgment did not dispose of Southgate's counterclaim for $75,000 it paid out under the construction loan.

When a separate trial of any claim, counterclaim or third-party claim is ordered in any case and a jury trial thereof is had, the separate judgment entered upon the verdict therein shall be deemed a final judgment for the purposes of appeal within the meaning of Section 512.020, RSMo. When a separate trial is had before the court without a jury of claims arising out of the same transactions, occurrences or subject matter as the other claims stated or joined in the case the judgment entered shall not be deemed a final judgment for purposes of appeal within the meaning of Section 512.020, RSMo, unless specifically so designated by the court in the judgment entered. However, *when a separate trial is had before the court without a jury of an entirely separate and independent claim unrelated to any other claims stated or joined in the case, then the judgment entered shall be deemed a final judgment for purposes of appeal within the meaning of Section 512.020, RSMo, unless the court orders it entered as an interlocutory judgment to be held in abeyance until other claims, counterclaims, or third-party claims are determined.*

The test of finality as presented in Rule 81.06 is one of dependency. This point was amplified in the following portion from *Luecke v. Missouri Department of Conservation*, 674 S.W.2d 691, 692[1] (Mo.App. 1984):

So long as the remaining claims are not "dependent in any respect upon the outcome of or final disposition of" the judgment rendered, that judgment is final without need for the trial court to so designate. *See also, Chubb Group of Insurance v. C.F. Murphy & Assoc.*, 656 S.W.2d 766, 773 (Mo.App.1983).

A discussion of the concept of a separate judicial unit also appears in *Lipton Realty, Inc. v. St. Louis Housing Authority*, 655 S.W.2d 792, 793[1] (Mo.App.1983), where the court stated:

In order for a partial disposition to be a proper subject for appellate review, it

must constitute a distinct "judicial unit"; that is, a judgment which terminates the action with respect to the claim adjudged.

Southgate's counterclaim in the Axtell suit is totally independent of claims of Axtell in that same suit. Southgate's counterclaim is based on money paid under the construction loan. Axtell's claims arise from the escrow agreement. The outcome of Southgate's counterclaim is not dependent in any way on Axtell's petition. The summary judgment entered in the Axtell suit was entered on an entirely separate and independent claim and is automatically deemed final under Rule 81.06 absent the trial judge's making it interlocutory. *Luecke v. Missouri Department of Conservation, supra.*

As the claims are separate and distinct Axtell cannot be heard to say that on ultimate disposition of Southgate's counterclaim, which is all that remains of the Axtell suit, the interest on escrow claim could then be considered on appeal. Axtell's cause of action on the interest on escrow became final after entry of summary judgment in February 1985 and the subsequent failure to file notice of appeal.

■ Axtell asserts that because the judge did not declare the summary judgment in the Axtell suit to be final, the sentence in Rule 81.06 just prior to the emphasized portion controls and the judgment cannot be deemed final. Axtell's assertion is without merit. The summary judgment in the Axtell suit was on a claim separate and distinct from the counterclaim. Further, that judgment extinguished the entire cause of action for interest on the escrow account. As such, the judgment falls within the previously emphasized language of Rule 81.06. This ruling of finality does not violate the principle stated in *Weir v. Brune, supra,* that one legal theory of recovery cannot be brought on appeal, while other legal theories of recovery on the same claim stand for trial. 262 S.W.2d at 600[7, 8]. The defense of offset presented in the case at bar no longer stands for trial as it is identical to and dependent on the same facts and written agreement as the interest issue which was extinguished by the summary judgment in the Axtell suit.

Carried to logical conclusion Axtell's theory of the interlocutory nature of the summary judgment entered in the Axtell suit would allow Axtell to suspend proceedings in this case until judgment was entered on Southgate's counterclaim, and then to appeal from the adverse judgment on their petition. This result would be error as Axtell has available but one recovery on the claim for lost interest. If the Axtells had "won" on their petition, their cause of action would have ended. They could not come back in the case at hand and obtain a credit or offset for lost interest in the suit for deficiency. Axtell's cause of action became final after entry in February 1985 and subsequent failure to file a notice of appeal.

Under Rule 81.06, summary judgment on the petition of Axtell, representing a separate judicial unit and not being dependent on Southgate's counterclaim, became final. The outcome of Southgate's counterclaim is not dependent in any way on Axtell's petition, and as such the language of 81.06 makes an exception to the traditional requirement that to be final a judgment must dispose of all parties and all issues. *Gillman v. Mercantile Trust Co.,* 629 S.W.2d 441, 443–44[1–4] (Mo.App.1981). Res judicata or claim preclusion keeps the same parties from relitigating the same cause of action. *Oates v. Safeco Insurance Company of America,* 583 S.W.2d 713, 719[8] (Mo. banc 1979). The defense of offset presented in the case at bar is identical to and dependent on the same facts as the claim for interest issue in Axtell's petition. Res judicata applies here and precludes relitigation of that issue.

■ Even if the judgment in the Axtell suit were not deemed final, the judgment in this suit would be sustained due to application of the parol evidence rule. The escrow agreement here is clear and unambiguous on its face and makes no mention of interest to be paid on the funds in question. The parol evidence rule is a rule of law and not a rule of evidence; evidence

offered in violation must be ignored and a decision must be rendered on the writing alone. *Harper v. Calvert,* 687 S.W.2d 227, 230[7] (Mo.App.1984); *Don Gaston & Son, Inc. v. Vic Koepke Excavating & Grading Co.,* 693 S.W.2d 850, 852 [2, 3] (Mo.App. 1985). Parol evidence may not be introduced to create an ambiguity in an unambiguous contract or to show an obligation is something other than as expressed in the written document. *Harper v. Calvert, supra,* at 230[6]. Axtell's proposed evidence of an oral agreement which would vary the unambiguous terms of a complete agreement must be disregarded as a matter of law. The case must be decided on the written agreement alone. *W.E. Koehler Construction Co. v. Medical Center of Blue Springs,* 670 S.W.2d 558, 562[7] (Mo. App.1984).

There was no genuine issue as to any material fact in the Southgate suit and as a matter of law Southgate was entitled to judgment for the deficiency.

The judgment of the trial court is affirmed.

All concur.