J.R. WAYMIRE CO., Respondent,

v.

ANTARES CORPORATION, Appellant.

No. WD 55048.

Missouri Court of Appeals,
Western District.

Sept. 1, 1998.

George E. Kapke, Kapke, Willerth & Overman, L.L.C., Independence, for appellant.

Robert H. Schnieders, Oak Grove, for respondent.

Before SPINDEN, P.J., and ULRICH and EDWIN H. SMITH, JJ.

ULRICH, Judge.

Antares Corporation ("Antares") appeals from the order of the trial court granting summary judgment in favor of J.R. Waymire Company ("J.R.Waymire"), a real estate agent, on its action against Antares for a sales commission for sale of property owned by Antares. Antares raises two points of trial court error. It contends that the trial court erred by (1) granting summary judgment in favor of J.R. Waymire where genuine issues of material fact exist regarding whether J.R. Waymire was entitled to a commission from the sale of the property under the terms of the listing agreement; and (2) granting J.R. Waymire prejudgment interest where the award of prejudgment interest

was inappropriate because Antares did not have access to or use of the funds during the prejudgment period. The judgment of the trial court is affirmed.

## FACTS

Antares owned real estate located near I–70 and Adams Dairy Drive in Blue Springs, Missouri ("the Property"). Antares entered into a contract with J.R. Waymire on March 4, 1995, authorizing J.R. Waymire to seek buyers for the Property and other properties belonging to Antares. Pursuant to the terms of the contract, Antares listed the Property "exclusively, for a period of 365 days from the date [of the contract]" with J.R. Waymire. Antares agreed to pay J.R. Waymire "as commission ten percent (10%) of the selling price should, during the time set forth herein, said property, be sold by [J.R. Waymire] or by another broker, at the above price and terms agreeable to me (or with my consent, for lesser sum or on other terms)." The contract further provided that, "[s]hould a sale be made within six months after this authorization terminates to parties with whom said Broker, or a cooperating broker, may negotiate during the term hereof, and whose name has been disclosed to me, then I agree to pay said commission to said Broker."

Prior to entering the contract with J.R. Waymire, Antares had been negotiating with the City of Blue Springs to sell the Property. Antares wrote a letter to the City of Blue Springs on March 24, 1995, advising the City of Blue Springs that it had engaged J.R. Waymire to manage the sale of the Property. Antares informed the City of Blue Springs that further discussions of the Property should be directed to J.R. Waymire.

From March 4, 1995, to March 4, 1996, J.R. Waymire negotiated with several parties concerning the sale of the Property but did not procure a buyer for the Property before the contract expired. Upon the expiration of the contract, J.R. Waymire furnished to Antares, pursuant to the terms of the contract, a list of potential buyers of the Property. The City of Blue Springs was included on this list as a potential buyer. Antares responded with a letter dated March 11, 1996, advising J.R. Waymire that it wished to terminate its contract with J.R. Waymire. In this letter, Antares stated "[c]oncerning the list of prospective clients which you submitted Friday, I am confused at the City of Blue Springs being listed. [Antares] thought that [it] made itself clear about The City of Blue Springs being an existing client and not included in our contract. As you are aware I have been negotiating with The City for several years and continued to negotiate with them during our agreement."

J.R. Waymire placed a lien and cloud on the title to the Property after expiration of the contract. Antares entered an agreement to sell the Property to the City of Blue Springs for $1,230,000 on June 27, 1996, within the six month period following the expiration of the contract. In order to prevent delay of the closing due to the lien and cloud on the title, Antares entered an escrow agreement with J.R. Waymire and placed the money from the sale of the Property in escrow.

Antares filed a petition for slander to title and for a declaratory judgment that the money in escrow belonged to it. J.R. Waymire filed a petition seeking real estate commission for the sale of the Property. The court consolidated the two actions on February 3, 1997.

J.R. Waymire filed a motion for summary judgment on April 12, 1997. The court granted the motion for summary judgment on September 12, 1997. The court entered judgment against Antares in the sum of $123,000 with prejudgment interest in the sum of $11,103.33 on September 29, 1997. Antares filed a motion for reconsideration that was denied by the trial court on October 31, 1997. This appeal followed.

## STANDARD OF REVIEW

Appellate review of the grant of summary judgment is reviewed *de novo*. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The record is viewed in the light most favorable to the party against whom judgment was entered, according that party all

reasonable inferences that may be drawn from the record. *Id.*

Summary judgment will be upheld on appeal if the movant is entitled to judgment as a matter of law and no genuine issues of material fact exist. *Id.* at 377. Facts asserted in affidavits or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. *Id.* For a claimant to establish a right to judgment as a matter of law, the claimant must show that there is no genuine dispute as to those material facts upon which the claimant would have the burden of persuasion at trial. *Id.* at 381.

Once the movant has established a right to judgment as a matter of law, the non-movant must show that one or more of the material facts shown by the movant not to be in dispute is, in fact, genuinely disputed. *Id.* The non-moving party may not rest upon the mere allegations and denials of the pleadings but must use affidavits, depositions, answers to interrogatories, or admissions on file to demonstrate the existence of a genuine issue for trial. *Id.; Reeves v. Keesler,* 921 S.W.2d 16, 19 (Mo.App.1996). A genuine dispute is one which "is real, not merely argumentative, imaginary or frivolous." *ITT,* 854 S.W.2d at 382. If the record contains competent evidence that two plausible, but contradictory accounts of essential facts exist, then a genuine issue of material fact remains to be resolved. *Bickerton, Inc. v. American States Ins. Co.,* 898 S.W.2d 595, 600 (Mo.App.1995). A question of fact exists when "fairminded people, exercising reasonable judgment could reach different conclusions on the issue in controversy." *Nieberg v. Marshall,* 865 S.W.2d 409, 410 (Mo.App.1993).

## I. J.R. WAYMIRE IS ENTITLED TO A COMMISSION UNDER THE CONTRACT

As its first point on appeal, Antares alleges that the trial court erred by granting summary judgment in favor of J.R. Waymire where genuine issues of material fact remain regarding whether J.R. Waymire was entitled to a commission under the terms of the contract. Antares specifically argues that J.R. Waymire was not entitled to a commission from the sale of the Property to the City of Blue Springs because pursuant to an oral agreement between the parties, the City of Blue Springs was excluded as a potential buyer under the contract.

■■■ "The cardinal rule in the interpretation of a contract is to ascertain the intention of the parties and to give effect to that intention." *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club,* 491 S.W.2d 261, 264 (Mo. banc 1973). Where the contract is unambiguous, intent is ascertained from the contract alone. *Id.; Carondelet Health Sys., Inc. v. Royal Gardens Assoc.,* 943 S.W.2d 669, 673 (Mo.App.1997). A disagreement by the parties as to the proper interpretation of the contract does not render the contract ambiguous. *Id.* In a contract, an ambiguity arises only where its terms are susceptible to fair and honest differences. *Carondelet,* 943 S.W.2d at 673; *CB Commercial Real Estate Group, Inc. v. Equity Partnerships Corp.,* 917 S.W.2d 641, 646 (Mo.App.1996). The determination of whether a contract is ambiguous is a question of law and properly decided by the court. *Id.*

■■■ Antares first argues that J.R. Waymire is not entitled to a commission under the terms of the written contract because it did not "procure" the City of Blue Springs as a buyer. Antares claims it procured the City of Blue Springs as a buyer before it entered into the listing agreement with J.R. Waymire. The contract between J.R. Waymire and Antares provided that J.R. Waymire was entitled to a commission "should, during the time set forth herein, said property be sold by said Broker ..." or "should a sale be made within six months after this authorization terminates to parties with whom said Broker, or a cooperating broker, may negotiate during the term thereof, and whose name has been disclosed to me ..." Under the plain language of the contract, J.R. Waymire was entitled to a commission if it sold the Property during the time period provided for in the contract. There was no requirement in the contract that J.R. Waymire "procure" the buyer for the Property. Because the contract did not require J.R. Waymire to "procure" the buyer of the Property, J.R. Waymire only had to sell the Property during the time period provided for in the contract to be entitled to a commission. An-

tares's argument that J.R. Waymire is not entitled to a commission because it did not procure the City of Blue Springs as a buyer is without merit.

■ Antares next argues that J.R. Waymire is not entitled to a commission under the contract because, pursuant to an oral agreement between the parties, the City of Blue Springs was excluded as a party with whom J.R. Waymire could contract for the sale of the Property and receive a commission. To allow introduction of evidence relating to what constitutes an oral modification of a written contract between the parties, Antares argues that the scope of the contract is ambiguous. Under the terms of the written contract, Antares agreed to pay J.R. Waymire commission for the sale of the Property within the six month period following expiration of the exclusive listing agreement if J.R. Waymire sold the Property "to parties with whom said Broker, or a cooperating broker, may negotiate during the term hereof, and whose name has been disclosed to me ... ." J.R. Waymire's disclosure of the City of Blue Springs as a potential buyer to Antares following expiration of the listing agreement is not disputed. Whether the City of Blue Springs was a party with whom J.R. Waymire "may negotiate during the term [of the contract]" is, therefore, determined.

Examination of the plain language of the contract reveals that the parties with whom J.R. Waymire "may negotiate during the term [of the contract]" references the first clause of the written contract which defines J.R. Waymire's authority, as broker, during the term of the contract. That clause states that Antares "list[s] with [J.R. Waymire], exclusively, for a period of 365 days from the date hereof ... ." Black's Law Dictionary defines "exclusive" as "appertaining to the subject alone, not including, admitting, or pertaining to any others. Sole. Shutting out; debarring from interference or participation; vested in one person alone. Apart from all others, without admission of others to participation." BLACK'S LAW DICTIONARY 564 (6 th ed.1990). The dictionary reference reflects the plain meaning of "exclusively." "Exclusively" as used in the contract between J.R.

Waymire and Antares had the effect of empowering J.R. Waymire as the sole broker for all potential buyers of the Property, including the City of Blue Springs. Accordingly, because J.R. Waymire negotiated with the City of Blue Springs during the term of the exclusive authorization to sell and it disclosed the City of Blue Springs as a potential buyer upon expiration of the exclusive authorization to sell, and because the Property was sold to the City of Blue Springs during the six month period following expiration of the exclusive authorization to sell as provided for in the written contract, J.R. Waymire established entitlement to the commission under the terms of the contract.

■ Because the contract is unambiguous, consideration of evidence pertaining to the oral modification of the written agreement between J.R. Waymire and Antares to exclude the City of Blue Springs as a potential buyer under the contract is barred by the parol evidence rule. The parol evidence rule is a rule of substantive law, rather than a mere rule of evidence. *Union Elec. Co. v. Fundways, Ltd.,* 886 S.W.2d 169, 170 (Mo. App.1994). The rule provides that complete and unambiguous written contracts cannot generally be varied, added to or contradicted by extrinsic evidence of prior or contemporaneous oral agreements. *Id.* Exceptions to the general parol evidence rule, however, exist. In cases of fraud, accident, mistake, duress, or mental incapacity, evidence of prior or contemporaneous agreements may be admissible. *Stanfield v. Grove,* 924 S.W.2d 611, 613 (Mo.App.1996); *W.E. Koehler Constr. Co., Inc. v. Medical Ctr. of Blue Springs,* 670 S.W.2d 558, 561–562 (Mo.App. 1984). Another example of an exception to the parol evidence rule exists in the Uniform Commercial Code. The UCC "modifies the rigor of that common law principle" in Article 2. *SAB Harmon Ind., Inc. v. All State Bldg. Sys., Inc.,* 733 S.W.2d 476, 486 (Mo.App. 1987). In section 400.2–202, RSMo 1994, extrinsic course of dealing or course of performance evidence is admissible to explain or supplement the terms of an agreement for the transaction of goods, but not to contradict the agreement terms. § 400.2–202, RSMo 1994; *SAB,* 733 S.W.2d at 486.

The question of whether a contract is ambiguous is one of law for the court to decide. *Waldorf Inv. Co. v. Farris,* 918 S.W.2d 915, 919 (Mo.App.1996); *Smith v. Lockwood,* 907 S.W.2d 306, 310 (Mo.App.1995). That question is also one of law on appeal, the standard for review of which is *de novo* with the appellate court independently considering the evidence and reaching its own conclusions. *Waldorf,* 918 S.W.2d at 919; *Bickerton, Inc. v. American States Ins. Co.,* 898 S.W.2d 595, 601 (Mo.App.1995). The written contract between J.R. Waymire and Antares was unambiguous. Antares neither alleged nor adduced proof of an exception to the parol evidence rule. Antares's proposed evidence of an oral agreement that would vary the unambiguous terms of a complete written agreement must, therefore, be disregarded as a matter of law. *Stanfield,* 924 S.W.2d at 613. The case must be decided on the written contract alone. *W.E. Koehler,* 670 S.W.2d at 562. The written agreement provided that J.R. Waymire had sole authority to enter into a contract for the sale of the Property. By selling the Property within the time period provided for in the contract, J.R. Waymire fulfilled its obligation under the contract and was entitled to a commission. The trial court, therefore, did not err in granting summary judgment in favor of J.R. Waymire. Point one is denied.

## II. J.R. WAYMIRE IS ENTITLED TO PREJUDGMENT INTEREST

As its second point on appeal, Antares argues that J.R. Waymire was not entitled to prejudgment interest on the commission under section 408.020, RSMo 1994. Antares specifically argues that prejudgment interest is improper because the money in dispute had been in escrow and was equally accessible to both Antares and J.R. Waymire and because Antares did not enjoy the benefit or use of the money during the prejudgment period.

"Interest" is the measure of damages for failure to pay money when payment is due even though the obligor refuses payment because the obligor questions legal liability for all or portions of the claim. *Schnucks Carrollton Corp. v. Bridgeton*

*Health and Fitness Inc.,* 884 S.W.2d 733, 740 (Mo.App.1994) (quoting *Denton Const. Co. v. Missouri State Highway Comm'n,* 454 S.W.2d 44, 59 (Mo.1970)). Parties may agree on a specific rate of interest which will control if it is not otherwise excessive under the law. *Schnucks,* 884 S.W.2d at 740; *Estate of Bruce v. Bruce,* 767 S.W.2d 598, 601 (Mo. App.1989); *Gus T. Handge & Son Painting Co. v. First Bank & Trust Co.,* 756 S.W.2d 652, 652 (Mo.App.1988). If no other rate of interest is agreed upon, section 408.020, RSMo 1994, is applicable. *Schnucks,* 884 S.W.2d at 740; *Bruce,* 767 S.W.2d at 601.

Section 408.020, RSMo 1994 provides:

> Creditors shall be allowed to receive interest at the rate of nine percent per annum, when no other rate is agreed upon, for all moneys after they become due and payable, on written contracts, and on accounts after they become due and demand of payment is made; for money recovered for the use of another, and retained without the owner's knowledge of the receipt, and for all other money due or to become due for the forbearance of payment whereof an express promise to pay interest has been made.

§ 408.020, RSMo 1994. Prejudgment interest is only awardable on liquidated claims. *Mel–Lo Enterprises Inc. v. Belle Starr Saloon, Inc.,* 716 S.W.2d 828, 829–30 (Mo.App.1986); *Foley Co. v. Walnut Assoc.,* 597 S.W.2d 685, 691 (Mo.App.1980). A liquidated claim is one which is fixed and determined or readily ascertainable by computation or a recognized standard. *Mel–Lo Enterprises,* 716 S.W.2d at 830.

The payments due under the real estate contract between Antares and J.R. Waymire were fixed and certain. As discussed in Point I, *infra,* because J.R. Waymire, as broker, successfully sold the Property within the time period provided for in the contract, it was entitled to ten percent of the selling price of the Property as commission. The selling price of the Property was $1,230,-000. J.R. Waymire, therefore, was entitled to a commission of $123,000. From June 27, 1996, the date of the sale of the property and the breach, to September 29, 1997, the date

of judgment, J.R. Waymire obtained no money pursuant to the contract. Because J.R. Waymire's commission was due and payable on June 27, 1996, the date of breach, and J.R. Waymire did not receive its commission from Antares, the trial court could properly award prejudgment interest under section 408.020. While the trial court did not order a hearing before awarding prejudgment interest to J.R. Waymire, a hearing is not required under section 408.020 before prejudgment interest may be awarded where no additional evidence is necessary to establish entitlement to the commission or the amount. Similarly, no requirement under section 408.020 exists, as suggested by Antares, that it have access to or use of the funds during the prejudgment period before prejudgment interest may be awarded. The refusal to pay the amount of the fee to which J.R. Waymire was entitled by the written contract denied J.R. Waymire use of the money. The trial court, therefore, did not err in awarding J.R. Waymire prejudgment interest in the sum of $11,103.33. Point two is denied.

The judgment of the trial court is affirmed.

All concur.